**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-2533-DDD-SP

THE GEO GROUP, INC.,

     Plaintiff,

v.

JILL HUNSAKER RYAN, Executive Director of the Colorado
Department of Public Health & Environment (CDPHE), in her
official capacity;

JEFF LAWRENCE, Director of the Environmental Health and
Sustainability Division of CDPHE, in his official capacity;

PHIL WEISER, Colorado Attorney General, in his official
capacity;

KELLY WEIDENBACH, Executive Director of the Adams County
Health Department, in her official capacity;

     Defendants.

---

**AFFIDAVIT OF KELLY WEIDENBACH**

---

I, Kelly Weidenbach, being first duly sworn, have personal knowledge of the following:

1.     I am the Executive Director of the Adams County Health Department ("ACHD")
and have served as the Director continuously since my appointment on September 1, 2022.

2.     Under my leadership, the ACHD Adams County Health Department began
operations on January 1, 2023 with and assumed responsibility for public health services across
Adams County while emphasizing health equity, community engagement, disease prevention,
and improved access to essential public health programs and services. Ex. 1.

1

3.      The ACHD has statutory authorization to administer and enforce public health laws, investigate and control conditions affecting public health, investigate and abate public health nuisances, and make necessary sanitation and health investigations and inspections on their own initiative or in cooperation with the Colorado Department of Public Health and Environment for matters within Adams County geographical limits.

4.      This statutory authorization allows ACHD oversight over detention facilities located within the county and is consistent with the ACHD's broader mission to investigate public health complaints and environmental health hazards throughout Adams County.

5.      The Adams County Health Department has conducted public health investigations and inspections at the Adams County Detention Facility ("ACDF") in furtherance of its statutory responsibility to protect public health within the county. These investigations have included evaluations of environmental health conditions, sanitation practices, communicable disease prevention, food safety, and other matters that could impact the health of incarcerated individuals, facility staff, and the surrounding community.

6.      ACDF has provided ACHD all necessary and requested access to detainees, staff, and facilities. Such access has never been denied or impeded by ACDF leadership or management.

7.      The January 2025 public health investigation conducted by the Adams County Health Department at the Aurora ICE Processing Center ("AICP") was prompted by multiple complaints suggesting potential communicable disease activity within the facility.

8.      These complaints triggered the need for ACHD to conduct an on-site investigation. The complaints further suggested conditions that could pose a risk to the health of

individuals in custody and warranted evaluation under the ACHD's statutory authority to investigate and inspect matters affecting public health within its jurisdiction. Ex. 2.

9.      The investigation conducted by the Adams County Health Department at the Aurora ICE Processing Center in January 2025 was a complaint-driven public health investigation involving both communicable disease and environmental health components, initiated in response to reports of potential illness clusters within the facility. It functioned as a suspected outbreak assessment in a congregate detention setting, during which public health officials evaluated whether reported gastrointestinal indicated ongoing transmission risk and assessed related environmental conditions, potentially including sanitation practices, food service operations, and infection control measures.

10.     The GEO Group, Inc. ("GEO"), who I believe is the company who owns and operates AICP, did not fully comply with all requests made by the my staff during the January 2025 investigation at AICP. During the course of the investigation, my staff was confronted with limitations set by GEO in obtaining timely access to interviews with facility staff and in obtaining complete operational information that was necessary to assess reported illness conditions and potential communicable disease risks. These impediments impacted my department's ability to promptly evaluate the scope of reported gastrointestinal illness concerns and to fully verify sanitation and infection control practices within AICP.

11.     In early June, 2026, my department received notification of a positive tuberculosis ("TB") test result from a detainee at AICP. TB is a serious disease and poses a legitimate health threat to those who come in contact with the disease. That threat is especially significant in close quarter settings such as those present in detention centers.

3

12.     Positive TB results require mandatory reporting to my department. Such complaints require investigation, including interviews with the infected individual and those with whom the individual had contact, and require the implementation of coherent and consistent control measures.

13.     My department has been in contact with the GEO regarding this report of TB in AICP, but to date, either GEO or U.S. Immigration and Customs Enforcement, or both have implemented significant roadblocks that have prevented my staff from being able to conduct or complete a meaningful investigation.

FURTHER SAYETH THE AFFIANT NOT.

DATED: July 1, 2026

_____
KELLY WEIDENBACH

COUNTY OF ADAMS        )
                       )ss.
STATE OF COLORADO      )

Subscribed and sworn to before me this 1st day of July, 2026.

ELIZABETH A ALBRIGHT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19974003689
MY COMMISSION EXPIRES FEB. 27, 2029

_____
ELIZABETH ALBRIGHT
Notary Public

My commission expires: 2/27/2029

4

Exhibit A, Page 4 of 4

BOARD OF COUNTY COMMISSIONERS FOR
ADAMS COUNTY, STATE OF COLORADO

RESOLUTION ESTABLISHING THE ADAMS COUNTY BOARD OF HEALTH

Resolution 2022-359

WHEREAS, in 1966, Adams County, Arapahoe County, and Douglas County formed the Tri-County Health Department, a district public health agency, to perform local health department functions in each of the three counties; and,

WHEREAS, on October 26, 2021, and in accordance with C.R.S. 25-1-513(2), the Adams County Board of County Commissioners issued Resolution 2021-592, giving the public health agency formal notice of Adams County's intent to withdraw from the district agency and establish and maintain a county public health agency; and,

WHEREAS, C.R.S. 25-1-508(1) requires boards of county commissioners, after passing a resolution to establish and maintain a county public health agency, to begin organizing the agency by appointing a county board of health; and,

WHEREAS, C.R.S. 25-1-508(2)(a) requires each county board of health to consist of at least five members appointed by the respective board of county commissioners for five-year terms; except that terms of the initial appointments shall be staggered; and,

WHEREAS, C.R.S. 25-1-508(2)(b) requires board of health members to be residents of the county in which the county public health agency is located and prohibits any business or professional group or governmental entity from constituting a majority of the board; and,

WHEREAS, in accordance with C.R.S. 25-1-501(c) the Adams County Health Department shall be organized under this Adams County Board of Health and shall be the local public health agency for Adams County, on or before December 31, 2022.

NOW, THEREFORE, BE IT RESOLVED by the Board of County Commissioners of the County of Adams, State of Colorado, that the Adams County Board of Health is hereby established and staff shall begin recruiting volunteers to serve on the Board, pursuant to the following rules and parameters:

1. Scope of Board

The Adams County Health Department shall be organized under this Adams County Board of Health ("Board") and this Board shall be the governing body of the Adams County Health Department.

The Board shall immediately begin exercising those powers and duties conferred and imposed upon such Boards as are necessary to organize and prepare the county public health agency to provide or arrange for the provision of quality, core public health services for all individuals that live, work, and play in Adams County. The Board's powers and duties include, but are not limited to, (1) selecting the agency's public health director; (2) ensuring the agency is equipped with the necessary offices and facilities; (3) accepting, and through the public health director, using, dispersing, and administering all aid, property, services, or moneys allotted to the agency; (4) making agreements that may be required to receive such moneys or other assistance; (5) exercising all other powers allowed by law; and (6) issuing resolutions, ordinances, rules, policies, bylaws, and orders necessary for the proper administration and provision of core public health services, on or before December 31, 2022. However, no such resolution, ordinance, rule, policy, bylaw, or order shall interfere or conflict with the Tri-County Health Department's authority to act as the public health agency for Adams County through December 31, 2022.

The Board shall assume all powers and duties conferred and imposed upon such local boards upon the final organization of the county public health agency, consisting of a public health director and staff necessary to provide public health services, and upon the dissolution of the Tri-County Health Department, on or before December 31, 2022.

2. Board Membership and Terms

The Adams County Board of Health shall consist of seven (7) members. Board members shall be residents of Adams County and shall be appointed by the Adams County Board of County Commissioners. Board members shall serve without compensation but shall be reimbursed for their actual and necessary expenses.

Three of the members' initial terms shall expire on January 1, 2026, and four of the members' initial terms shall expire on January 1, 2028, with each member thereafter serving a term of five years. Members shall serve no more than two consecutive terms.

The term of any member shall terminate immediately should that member no longer reside in Adams County. Any vacancy on the Board shall be filled in the same manner as full-term appointments by the appointment of a qualified person for the unexpired term. Board members shall only be removed for cause.

No business or professional group or governmental entity may constitute a majority of the Board.

The Adams County Board of County Commissioners, after statutory requirements are met, and to the greatest extent possible, shall consider the following when appointing members to the Board:
- Representation of diverse races, ethnicities, ages, socioeconomic statuses, and genders.
- Representation of persons with disabilities.
- Representation of community partners such as healthcare, community-based organizations, businesses, advocacy organizations, and citizens.
- Geographical representation of Adams County, including rural and urban representation.
- Representation from a broad range of professional backgrounds including public health; environmental health; medical/nursing; health equity; health promotion/education; mental health/social work; education; advocacy; media relations; and business.

Ideal candidates should also have a clear understanding of the underpinnings of social determinants of health, social justice, and health equities; knowledge of or experience working with public health programming; and commitment to attending Board of Health meetings on a regular basis.

3. Meetings

The Board shall determine its meeting schedule but must hold regular meetings at least once every three months. Meeting times and locations shall also be determined by the Board but shall occur at such times as necessary to ensure equitable access. Agendas for all meetings shall be posted on the Adams County website and such other places as the Board may determine, and in accordance with the Colorado Open Meetings Law.

The Board may adopt, and at any time may amend, bylaws in relation to its meetings and the transaction of its business.

**Upon motion duly made and seconded the foregoing resolution was adopted by the following vote:**

| | |
|---|---|
| **Henry** | **Excused** |
| **Tedesco** | **Aye** |
| **Pinter** | **Aye** |
| **O'Dorisio** | **Aye** |
| **Baca** | **Aye** |
| | **Commissioners** |

**STATE OF COLORADO   )**
**County of Adams          )**

**I,      Josh Zygielbaum     , County Clerk and ex-officio Clerk of the Board of County Commissioners in and for the County and State aforesaid do hereby certify that the annexed and foregoing Order is truly copied from the Records of the Proceedings of the Board of County Commissioners for said Adams County, now in my office.**

**IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said County, at Brighton, Colorado this 28th day of June A.D. 2022.**

**County Clerk and ex-officio Clerk of the Board of County Commissioners**

**Josh Zygielbaum:**

    **By:**

**Deputy**

 

**Outbreak Number:** N/A
**Outbreak Name, Location**: Aurora ICE Processing Center, 3130 Oakland St., Aurora, CO
**Date of this Report:** 3/24/26

**Date Outbreak Reported to Public Health:**1/2/26
**Investigation Start Date:** 1/2/26
**Cluster/Outbreak Identification Method:** Anonymous complaint
**Agent:** Gastroenteritis, disease not specified
**Lab confirmation**: No
**Setting:** Detention Facility
**Number of Cases:** 1
**Number of Persons Exposed:** 1,400 detainees
**Range of Illness Onsets:** 01/26/2026
**Outbreak Case Definition:** Two or more persons associated with the Aurora ICE Processing Center with symptoms of vomiting and/or diarrhea from December 15, 2025-February 23, 2026
**Date Investigation Concluded:** 02/23/2026
**Agencies Involved:** Adams County Health Department, Colorado Department of Public Health and Environment
**Epidemic Curve:** N/A

**Background:** On January 2, 2026, the Communicable Disease Epidemiology program (CDE) at Adams County Health Department (ACHD) received an anonymous complaint sent from the Colorado Department of Public Health and Environment (CDPHE) about widespread gastrointestinal (vomiting and diarrheal) and respiratory illness at the Aurora ICE Processing Center (AIPC). On January 5, 2026, CDE received a second complaint from "multiple" anonymous sources from another local public health agency. Both anonymous complaints reported possible gastrointestinal illness among kitchen staff, which prompted an on-site investigation at AIPC.

**Methods:** For a single complaint of illness at a facility, the standard follow-up investigation is to contact the facility directly and discuss recently diagnosed illnesses that may be relevant to the complaint. Multiple complaints of illness for the same facility generally result in an on-site investigation by CDE and other relevant programs at ACHD. A survey for kitchen staff and detainees to identify and assess illness and potential risk for transmission is used during the investigation. The survey is available in both English and Spanish language and documents. Hard copy surveys are printed in case there are logistical issues with the electronic survey. Any activities not completed during an onsite investigation are conducted by phone or electronic survey following the site visit. Additional surveys for managerial and other program staff are used to identify and assess facility specific risk factors for additional exposure or transmission risks, illness in the facility, and other information that may be relevant to the outbreak.

Relevant resources and materials are provided to the facility as part of the outbreak response. Typically, these include line list templates for the surveillance and collection of information of ill persons, stool

collection kits to diagnose illness in persons with symptoms, and guidance on preventive and control measures for the facility to implement and follow during and after the outbreak.

Environmental Health (EH) staff perform a disease focused kitchen inspection to identify possible violations and provide corrective actions for any identified violations.

Laboratory diagnosed cases of illness are investigated by CDE using standard disease-specific forms to identify clinical compatibility, relevant exposures, and locations of potential transmission. Forms are completed by phone or in-person interviews with the case. Medical record reviews of the relevant visit(s) where specimens are collected for testing are conducted to supplement investigations and identify high-risk exposures or settings.

**Case definition:** Cases were defined as any person associated with AIPC, including staff, detainees, and visitors, with GI symptoms, vomiting and/or 3 or more episodes of diarrhea in a 24-hour period, OR a positive laboratory test for a GI illness beginning December 15, 2025-February 23, 2026
**Outbreak definition:** An outbreak was defined as two or more cases among persons associated with AIPC with onset dates between December 15, 2025-February 23, 2026.
**Laboratory Testing:** Staff or detainees who reported GI symptoms on the date of the onsite visit through 3/23/26 were to be provided with stool specimen collection kits supplied by ACHD for testing. Specimens are sent to the Colorado State Public Health Lab (CSPHL) for initial screening for norovirus. Any specimens that do not have norovirus detected would be considered for reflex tested for bacterial testing of other potential enteric pathogens. Residual clinical specimens tested at commercial laboratories can be forwarded to CSPHL for additional confirmatory testing. Alternatively, staff or detainees reporting GI symptoms could be tested through routine processes at AIPC and reported to ACHD.

**Results:**
On January 2, 2026, ACHD conducted a routine follow-up investigation of a single complaint of illness by phone with the health service administrator (HSA) at the facility. No outbreak of illness was reported.

After more than one complaint of illness was received, CDE conducted a site visit investigating reports of illness on January 7, 2026, with a focus on possible GI illness amongst kitchen staff. Three CDE staff, two EH staff, and one field epidemiologist from CDPHE, including two Spanish speaking staff were part of the site visit. CDE interviewed six detainees working in the kitchen, and GeoGroup contractors: three kitchen staff, and the kitchen supervisor. CDE did not identify any individuals meeting the case definition on the date of the onsite investigation. No persons CDE interviewed reported GI illness among other staff or detainees in the kitchen or in other areas of the facility. Outbreak response materials, stool collection kits, and resources were provided to the facility for reporting, prevention, and control of GI illness.

Some interviewed persons reported unspecified non-GI respiratory illness but upon review, did not meet the threshold for outbreak status (ex. >2 cases of influenza with symptom onset within 7 days of each other).

ACHD did not conduct management interviews with health services, security, or facilities due to delays caused by the facility's legal counsel on the day of the onsite investigation. Despite repeated attempts to coordinate follow-up interviews with these representatives through consultation with the GeoGroup legal counsel, ACHD was not given access to these representatives to complete the standard investigation interviews.

ACHD was notified of a case of yersiniosis on January 27, 2026, in a detainee of AIPC, through routine reporting channels of a medical provider outside of AIPC. ACHD notified the HSA at AIPC on the same day. ACHD conducted standard medical record reviews on January 27, 2026, and identified AIPC and the external medical facility where the case was treated as potential exposure locations for the source of illness. A concurrent diagnosis of norovirus was also found in this individual.

ACHD conducted a phone interview with the case patient with Yersiniosis on February 11, 2026. ACHD did not identify a source of *Yersinia* infection through the interview. ACHD identified a likely exposure for norovirus outside of AIPC. A recommendation was made for the case to have an isolated toilet available to reduce the potential spread of illness. The HSA confirmed that the case was in the medical unit and would have a single use toilet while they recovered.  No additional cases of yersiniosis were reported by AIPC in the four weeks following the onset of symptoms of the reported case.

**Laboratory:** No laboratory specimens were collected on the day of the onsite investigation. No stool specimen kits provided to health services at the facility were received for testing. Residual stool specimens from the yersiniosis case sent to CDPHL were culture confirmed for *Yersinia* bacteria; norovirus was not detected in the residual specimens.

**Environmental Inspection:** Two minor violations were identified during the kitchen inspection on January 7, 2026, by EH staff. Both violations were corrected on site. A copy of the inspection report is attached.

**Discussion and Recommendations:** No cases of GI illness were identified or reported to CDE at AIPC between 12/15/25-2/23/26. ACHD was notified through routine surveillance of a detainee who tested positive for yersiniosis; investigation into this yersinosis infection revealed the person also tested positive for norovirus, the most common cause of gastrointestinal outbreaks in the US[1]. However, the norovirus infection was determined to have been acquired before the person was detained. The phone interview with the yersiniosis case was significantly delayed from the original request due to CDE's delayed access to the case patient. Prompt interviews for cases of communicable disease are essential to prevent further transmission and identify potential sources of exposure. As is common with single cases of foodborne illness, a single likely source of exposure was not found. The likelihood of person-to-person transmission of yersinosis is low compared to other common enteric illnesses[2].

While some investigation components were completed, interviews with management were continually delayed by the facility and ultimately ACHD was not provided with access to them. Opportunities for the identification of illness were recommended to AIPC including collecting specimens for testing from detainees and staff with vomiting and/or diarrhea to diagnose illness not routinely tested, allowing distribution of epidemiologic surveys to people in the facility, and continuation of screening of persons working in the kitchen for illness prior to working. ACHD provided recommendations to improve communications between

Exhibit 2, Page 3 of 7

AIPC and ACHD was recommended to ensure timely completion of investigation requirements for any future reportable conditions at AIPC, including outbreaks. Recommendations for improved communications included:

- Providing public health officials with timely access to staff, especially health care staff, as per our routine investigation procedures.
- Reinstating communications between HSA and ACHD CDE for management of individual reportable conditions, including outbreak identification and management.
- Establishing routine quarterly meetings with CDE and GeoGroup staff to conduct regular check ins on shared priorities for staff and detainees related to communicable disease awareness, prevention, and response between GeoGroup, Immigrations and Customs Enforcement, and ACHD.

**Conclusion:** CDE communicated the investigation findings and recommendations to AIPC staff via email and through video conference. CDE stressed the importance of continuing routine communications regarding reports of communicable disease with the HSA. CDE also relayed the importance of timely communications with the HSA and persons with reported illness at AIPC. No AIPC staff have followed through on the recommended routine communication since the outbreak was completed. CDE will continue to log complaints of illness at AIPC and monitor Epitrax for reports of illness among persons at AIPC.

**References**
1. Centers for Disease Control and Prevention, Foodborne Disease Active Surveillance Network (FoodNET) https://wwwn.cdc.gov/FoodNetFast/PathogenSurveillance
2. Colorado Department of Public Health and Environment, Communicable Disease Manual, https://cdphe.colorado.gov/dcphr/communicable-disease-manual/yersiniosis

**Attachments:** Final list of recommendations for AIPC. EH kitchen inspection report.

Exhibit 2, Page 4 of 7

**RECOMMENDATIONS FOR COMMUNICABLE DISEASE INVESTIGATION AT GEO AURORA ICE PROCESSING CENTER**

The Adams County Health Department (ACHD) received multiple complaints of gastrointestinal (GI) illness (vomiting and diarrhea) occurring in the Aurora ICE Processing Center (AIPC) operated by GeoGroup. A routine suspect outbreak investigation in response to reported illness at the facility began on 1/7/26 to determine if illness was occurring at the AIPC and provide support for outbreak management and recommendations for disease control, as per C.R.S. §§25-1-506, 25-1-509, and 25-4-1604. No illness was identified based on the components of the investigation that were completed.

The following recommendations are provided to fulfill the reporting requirements and responsibilities of 6 CCR 1009-1 and facilitate collaboration between AIPC and ACHD for the health and safety of staff and detainees.

1. Report all suspect and confirmed reportable conditions, including outbreaks or increases in symptomatic (e.g. vomiting and diarrhea) illness (suspect outbreaks) to ACHD within timeframes outlined in Communicable Reportable Conditions.

   a. Report to ACHD by phone and email; Communicable Disease Epidemiology Phone: Monday-Friday, 8am-5pm: 720-769-7600, Email: disease@adamscountyco.gov.  All other times, including after hours and holidays: 720-200-1486.

   b. Perform or order laboratory testing to diagnosis illness otherwise not routinely tested, when an increase in illness occurs.

2. Provide timely access to staff, especially health care staff, as per our routine investigation procedures.

   a. Enable ACHD to conduct disease-focused inspections and epidemiology interviews, including but not limited to interviews with Health Services Administration (HSA), kitchen workers, security, and facilities management.

   b. Provide access to ill people in the facility for epidemiologic interviews.

   c. Allow for distribution of epidemiologic surveys to affected population in the facility, including staff and detainees.

3. Reinstate as needed communications between HSA and ACHD Communicable Disease Epidemiology (CDE) for management of individual reportable conditions, including outbreak identification and management.

4. Establish routine quarterly communications with ACHD CDE and GeoGroup HSA and Administrative staff to conduct regular check ins on shared priorities for staff and detainees

1

Exhibit 2, Page 5 of 7

related to communicable disease awareness, prevention, and response between GeoGroup, Immigrations and Customs Enforcement, and ACHD.

5.  Continue illness screening for kitchen workers and maintain a record of symptoms of illness for detainees reporting illness during pre-work screening to track and identify potential outbreaks. Use unique identifiers to limit the collection of personal health information.

    a.  Ensure return to work authorization by the Medical Director for detainees reporting illness.

6.  Provide regular communication and resources to staff and detainees to report illness (e.g. vomiting, diarrhea) to their supervisors or security even when treatment is not typical to allow timely identification of potential outbreaks by health services and determine if isolation is necessary.

7.  During times of increased illness and seasonal peaks of GI illness, practice enhanced disinfection for norovirus. Refer to materials received from ACHD for disinfection instructions.

8.  Hand washing is an extremely important step in controlling the spread of illness. Promote hand washing and require staff and detainees to wash their hands after using the restroom, before eating, prior to donning gloves, and when switching tasks.

If you have questions or concerns about these recommendations, please contact us.

2

3