**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-02533-DDD-SBP

THE GEO GROUP, INC.,

      Plaintiff,

v.

JILL HUNSAKER RYAN, in her official capacity as Executive Director of the
Colorado Department of Health & Environment (CDPHE),
JEFF LAWRENCE, in his official capacity as Director of the Environmental Health
and Sustainability Division of CDPHE,
PHIL WEISER, in his official capacity as Colorado Attorney General,
KELLY WEIDENBACH, in her official capacity as Executive Director of the Adams
County Health Department,

      Defendants.

---

**STATE DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY
INJUNCTION [ECF NO. 2]**

---

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

    I.     HB26-1276 ................................................................................................................ 3

    II.    AIPC and Plaintiff .................................................................................................. 5

ARGUMENT ......................................................................................................................... 6

    I.     Plaintiff has failed to carry its burden on likelihood of success on the
         merits. ...................................................................................................................... 7

      A.    Plaintiff's challenge to purported "direct regulatory requirements" is not
      justiciable because HB26-1276 merely authorizes future rulemaking. ............... 7

      B.    Plaintiff cannot assert its claims under § 1983 or the Declaratory
      Judgment Act. ......................................................................................................... 11

         1.    Plaintiff lacks a cause of action for its Supremacy Clause claims. ........... 12

         2.    Plaintiff lacks a cause of action for its Contracts Clause claim. ............... 14

      C.    HB26-1276 does not violate the intergovernmental immunity doctrine. 16

         1.    HB26-1276 does not directly regulate the United States. ....................... 16

         2.    HB26-1276 does not discriminate against the federal government. ....... 18

      D.    Federal law does not preempt HB26-1276. ............................................... 21

         1.    Field preemption does not apply. ........................................................... 22

         2.    Conflict preemption does not apply. ....................................................... 24

      E.    HB26-1276 does not violate the Contracts Clause. ................................ 27

    II.    Plaintiff has not established irreparable harm. ............................................. 28

    III.   The balance of equities and public interest strongly favor Colorado. ........... 30

    IV.   The court should not enter a permanent injunction or final judgment. ...... 31

CONCLUSION ..................................................................................................................... 32

**INTRODUCTION**

Among its core historic police powers, Colorado enjoys broad authority to ensure healthy and safe conditions in detention facilities and similar institutions within the State. This safeguards the health and safety of everyone in Colorado, including those within the institutions (both detainees and employees) and those outside. Unsafe conditions in an institution can quickly become a public health concern for the broader community, for example, through the spread of communicable disease. To protect this paramount interest, Colorado has conducted inspections of all facilities within the State for years, including immigration detention and state penal institutions.

Much of this lawsuit is premised on a misunderstanding. Plaintiff claims immediate irreparable harm because HB26-1276 purportedly requires it to "implement burdensome operational changes" through new direct regulatory requirements. ECF No. 2 ("Mot.") at 13, 22. But the law does no such thing. Instead, HB26-1276 grants the Colorado Department of Public Health and Environment ("CDPHE") "the power to require" through rulemaking that covered facilities create annual reports; bar detention of minors with nonfamilial adults; and staff facilities full-time with health care professionals. HB26-1276 § 3. Critically, CDPHE has not created any such rules, does not currently have any plans to do so, and any penalties for failure to comply with substantive requirements are tied to violation of these nonexistent rules. The Court lacks jurisdiction to adjudicate speculative

1

claims about hypothetical future rules, let alone authority to grant the extraordinary relief of a pre-enforcement preliminary injunction.

The remaining challenged portions of HB26-1276 make minor adjustments to the pre-existing inspection regime. For example, covered facilities must reimburse for inspection costs, similar to the Colorado Department of Corrections reimbursing for inspections of its facilities, and there are more required inspections. But inspections will remain fundamentally the same after HB26-1276, including the form, substance, and applicable standards, and CDPHE's ability to inspect whenever it deems necessary. Plaintiff does not challenge any pre-existing aspects of the inspection regime. Put differently, Plaintiff will remain subject to substantively identical annual and unannounced inspections with or without this new law, inspections CDPHE has conducted at the Aurora ICE Processing Center ("AIPC") for years without incident.

Plaintiff fails to meet its high burden to obtain a preliminary injunction. First, Plaintiff's claims suffer from numerous flaws that prevent a likelihood of success: (1) the challenges to purported direct regulatory requirements are not justiciable because HB26-1276 merely authorizes future discretionary rulemaking; (2) Plaintiff lacks a cause of action pursuant to 42 U.S.C. § 1983 or the Declaratory Judgment Act; (3) HB26-1276 does not violate the Supremacy Clause because the Immigration and Nationality Act does not preempt state or local health regulations, and HB26-1276 does not directly regulate the federal government or discriminate

against it; and (4) HB26-1276 does not violate the Contracts Clause. Plaintiff likewise has not established imminent irreparable harm, instead largely claiming injury from regulations that do not exist. Taken together, Plaintiff has not established a clear and unequivocal right to relief, and the Court should deny a preliminary injunction.

## BACKGROUND

### I.     HB26-1276

Colorado has long exercised its police powers to ensure the health and safety of individuals housed within institutions in the State. Section 25-1.5-101(1)(i)(I)(A) of Colorado Revised Statutes provides CDPHE authority to "establish sanitary standards and make sanitary, sewerage, and health inspections and examinations for charitable, penal, and other public institutions." In 2020, the General Assembly clarified the definition of "penal institution" to make clear that it covered "any public or private facility in Colorado that houses or detains noncitizens for purposes of civil immigration proceedings." *Id.* § 25-1.5-101(1)(i)(I)(B). Under this authority, CDPHE has regularly inspected AIPC, including most recently on August 22, 2025, and January 14, 2026. Lawrence Decl. ¶¶ 10–11.

Like CDPHE, the federal government also periodically inspects immigration detention facilities, and its reports document pervasive unsafe conditions. For example, a September 2024 Department of Homeland Security Office of Inspector General ("DHS-OIG") report described the result of 17 of its unannounced

3

inspections, finding that 35% of inspected facilities failed to meet environmental health and safety standards, 71% failed to provide required care, and 59% failed to meet medical care and staffing requirements.[1] AIPC is not immune to these problems, with DHS-OIG finding numerous failures to meet basic standards.[2]

HB26-1276 amended C.R.S. § 25-1.5-101, maintaining the annual inspection requirement that previously existed, directing CDPHE to use its existing authority to conduct additional unannounced inspections and examinations at least quarterly, and explicitly providing county and district public health agencies authority to inspect at their discretion. HB26-1276 §§ 2, 3. In addition, the law requires that civil immigration detention facilities reimburse CDPHE for the costs of any inspection or examination, and that a facility's refusal to allow inspection may result in a maximum civil penalty of $50,000. *Id.* HB26-1276 commands CDPHE to "set fees for inspections" and "adopt rules" as necessary. *Id.*

HB26-1276 also granted CDPHE, through rulemaking, "the power" to (1) require a yearly report; (2) prohibit the housing or detention of a minor in the same room as a nonfamilial adult;[3] and (3) require sufficient medical and mental

---

[1] DHS-OIG, *Summary of Unannounced Inspections of ICE Facilities Conducted in Fiscal Years 2020-2023* 4 (Sept. 24, 2024), https://www.oig.dhs.gov/sites/default/files/assets/2024-09/OIG-24-59-Sep24.pdf.

[2] DHS-OIG, *Results of an Unannounced Inspection of ICE's Denver Contract Detention Facility in Aurora, Colorado* (June 12, 2024), https://www.oig.dhs.gov/sites/default/files/assets/2024-06/OIG-24-29-Jun24.pdf.

[3] Minors are not detained at AIPC, Lawrence Decl. ¶ 17, yet Plaintiff still asks this Court to enjoin this provision.

4

health professionals staffing at all times. *Id.* None of these newly granted powers are self-executing; CDPHE must initiate rulemaking to exercise them. Lawrence Decl. ¶ 18. Should CDPHE choose to exercise any of these powers through rulemaking and should a facility fail to comply with such regulations, HB26-1276 authorizes a maximum civil penalty of $50,000 through an enforcement action by the Attorney General. HB26-1276 § 3.

## II.    AIPC and Plaintiff

Plaintiff is a private corporation that has contracted with ICE to run numerous civil immigration detention centers. While its AIPC Contract details various ICE standards Plaintiff must meet, it also expressly recognizes that Plaintiff must comply with state law. For example, the AIPC Contract requires Plaintiff to: (1) accept and provide for "the secure custody, care, and safekeeping of detainees in accordance with the State and local laws, standards, policies," ECF 4, Ragsdale Decl., Ex. A ("AIPC Contract") at 33; (2) obtain permits and licenses from "federal, state, [or] local" officials and "comply with all applicable federal, state, and local laws," *id.* at 34; (3) "comply with all federal and state laws regarding inspections, licensing, and registration for" vehicles, *id.* at 37; (4) employ transportation officers that meet federal and state licensing requirements, *id.* at 38; and (5) certify that all armed transportation officers have received firearms training "in accordance with State and local firearm certification requirements," *id.* at 60. Furthermore, Plaintiff "warrant[ied] that there are no legal impediments to housing

ICE detainees under Colorado law and concur[red] that the risk" associated with compliance with Colorado law would be borne "solely" by Plaintiff. *Id.* at 33.

The contract contemplates inspection by state regulatory agencies and demands that Plaintiff cooperate. Paragraph H, "Inspection by Regulatory Agencies," states that Plaintiff's work "is subject to inspection by other [federal] Government agencies" and other "regulatory agencies." *Id.* at 46. The contract's reference to "regulatory agencies," as distinct from "Government agencies," necessarily implies state or local actors because the contract defines "Government" to exclusively mean "the United States Government." *Id.* at 26. Plaintiff agreed to inspection by these state or local regulatory agencies and that it would "participate in responding to all requests for information and inspection or review findings by [those] regulatory agencies." *Id.* at 47.

Plaintiff has clearly recognized both Colorado's authority and its obligations under the AIPC Contract by continuously submitting to and facilitating CDPHE inspections. Lawrence Decl. ¶ 12. HB26-1276 does not alter the scope, form, substance, or standards of any inspection. *Id.* ¶ 13.

## ARGUMENT

Plaintiff seeks a disfavored remedy—a pre-enforcement preliminary injunction. "To begin, there is no freestanding constitutional right to pre-enforcement review in federal court." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 52 (2021) (Thomas, J., concurring in part and dissenting in part). "Such a right

would stand in significant tension with the longstanding Article III principle that federal courts generally may not 'give advisory rulings on the potential success of an affirmative defense before a cause of action has even accrued.'" *Id.* Those concerns are on display here, where Plaintiff seeks to enjoin Defendants before any rules have even been considered. As detailed below, Plaintiff failed to establish any of the four factors required for the extraordinary relief of a preliminary injunction. *See Esch v. Carbon Helix LLC*, No. 22-cv-00206-DDD, 2022 WL 18777085, at *1 (D. Colo. Feb. 9, 2022) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005)).

## I.     Plaintiff has failed to carry its burden on likelihood of success on the merits.

Plaintiff is unlikely to succeed on the merits of each of its claims for numerous reasons.

### A.     Plaintiff's challenge to purported "direct regulatory requirements" is not justiciable because HB26-1276 merely authorizes future rulemaking.

Plaintiff lacks standing, and its claims are not ripe, to challenge what it describes as HB26-1276's "direct regulatory requirements," because HB26-1276 does not impose any such requirements and only authorizes discretion to CDPHE to issue future rules.

Plaintiff inaccurately claims that HB26-1276 "impos[es] mandatory reporting" on it and "dictat[es] medical staffing requirements." Mot. at 13; *see also id.* at 19. It alleges it could face penalties for noncompliance with HB26-1276's

7

"direct regulatory requirements." Compl. ¶ 62. In fact, HB26-1276 merely grants

CDPHE, through rulemaking, "the power to require" covered facilities to create

annual reports; bar housing minors with nonfamilial adults; and provide full-time

health care staffing. HB26-1276 § 3. But HB26-1276 does not itself impose any such

requirements. HB26-1276 also provides that CDPHE "*may* adopt rules it

determines are necessary" for those purposes, but it does not *require* CDPHE to do

so. *Id.* (emphasis added). Absent such rulemaking, these provisions impose no

obligations on Plaintiff and do not impact its operations in any way. Any

enforcement is likewise limited to failure to comply with these nonexistent rules,

not for any substantive requirement imposed by HB26-1276 itself. *Id.*

As a result, Plaintiff cannot make a "clear showing" that it is likely to

establish standing as to these rulemaking provisions, because it lacks an injury in

fact. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024). To have standing, Plaintiff

must show it "suffered an injury in fact" that is "concrete and particularized" and

"actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560–61 (1992) (citation modified). The "threatened injury must be

certainly impending"; "allegations of possible future injury are not sufficient."

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified).

Possible future injury is all Plaintiff could show here. CDPHE has not taken

any action to exercise its discretionary authority to impose requirements on

facilities related to annual reporting, housing of minors, or health care staffing.

Lawrence Decl. ¶ 18. Before it could impose such obligations, CDPHE would need to undertake a rulemaking process, which involves stakeholder engagement that lasts three to six months or longer; a rulemaking hearing open to the public; and a further period of delayed implementation before any new rules take effect. *Id.* ¶¶ 19–24. Any new rules can be challenged in court. *Id.* ¶ 25; *see also* C.R.S. §§ 24-4-106, 25-1-113. Until CDPHE initiates and completes this lengthy process, Plaintiff faces no "imminent" injury: it is under no new obligations concerning annual reporting, housing of minors, or health care staffing; it cannot be subjected to penalties for failure to comply with any such requirements; and it could not be the target of any enforcement action. Moreover, because Plaintiff does not currently house minors, *see* Lawrence Decl. ¶ 17, any future rules concerning their detention would not impact Plaintiff.[4]

For similar reasons, Plaintiff's challenge is unripe. The ripeness inquiry "focuses not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention." *Morgan v.*

---

[4] In *Geo Grp., Inc. v. Inslee,* 151 F.4th 1107 (9th Cir. 2025), the Ninth Circuit concluded GEO had alleged a sufficient injury in fact to challenge a statute that required the state health department to adopt rules with standards for private detention facilities, though no rules had yet been promulgated. *Id.* at 1114–15. But unlike here, the statute in that case *required* the state agency to adopt such rules and mandated that they cover certain topics. *Id.* at 1114; *see also* Wash. Rev. Code § 70.395.040(1). The court also "limited" the pre-enforcement challenge "to the question whether GEO ha[d] shown a sufficient likelihood that [the agency] w[ould] adopt such rules to justify a preliminary injunction." *Inslee*, 151 F.4th at 1115. Here, where the prospect, timing, and subject matter of future rules all rely on speculation, Plaintiff's asserted injury is too speculative to support standing.

*McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (quotation marks omitted).

Constitutional ripeness "is based on Article III's requirement that federal courts

hear only cases and controversies" and requires a matter to come before a court in

"clean-cut concrete form." *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir.

2019) (citation modified). Constitutional ripeness is not satisfied if an alleged injury

is not sufficiently imminent. *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012).

Even if a claim satisfies Article III's ripeness requirements, a claim may be

prudentially unripe based on: "(1) 'the fitness of the issue for judicial review' and

(2) 'the hardship to the parties from withholding review.'" *Cabral*, 926 F.3d at 693

(quoting *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016)).

Here, as discussed above, Plaintiff has not alleged a "certainly impending"

injury from the provisions of HB26-1276 authorizing CDPHE to engage in future

rulemaking. Because Plaintiff does not face any imminent injury from those

provisions, its claims challenging them are not constitutionally ripe.

Nor is Plaintiff's challenge to those provisions prudentially ripe because

Plaintiff's claims as to the rulemaking provisions turn on facts that have not yet

developed. *See Awad*, 670 F.3d at 1124. "A claim is not ripe for adjudication if it

rests upon contingent future events that may not occur as anticipated, or indeed

may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation

modified). Before this Court can determine whether any rules ultimately adopted by

CDPHE might violate the Supremacy Clause or substantially impair Plaintiff's

10

contract, it needs to know the substance of those rules. And because no rules exist, these issues are not now fit for judicial review.

Similarly, Plaintiff faces no hardship if judicial review on this portion of its claims were withheld. Currently, there are no rules in place, and Plaintiff cannot face penalties or enforcement action for violating nonexistent rules. Thus, "[a]s a matter of pure logic, postponing decision on this case until Plaintiff has suffered some concrete harm cannot itself constitute an independent harm to Plaintiff." *Morgan*, 365 F.3d at 891. Instead, Plaintiff invites this Court to "'entangl[e] [it]sel[f] in [an] abstract disagreement'"—precisely what the ripeness doctrine is meant to avoid. *Cabral*, 926 F.3d at 694. If CDPHE ultimately does promulgate rules that Plaintiff believes cause it harm, "[j]udicial review will then be available," and a court's assessment "is likely to stand on a much surer footing in the context of a specific application." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164, 166 (1967).

Because Plaintiff's challenge to the provisions of HB26-1276 that grant CDPHE certain rulemaking authority is not justiciable, the preliminary injunction should be denied as to those claims.

## B. Plaintiff cannot assert its claims under § 1983 or the Declaratory Judgment Act.

Plaintiff purports to assert all claims under 42 U.S.C. § 1983 and the Declaratory Judgment Act. Compl. ¶ 14 ("GEO seeks relief on all claims pursuant to

11

[the Declaratory Judgment Act] and 42 U.S.C. § 1983.").[5] However, neither § 1983

nor the Declaratory Judgment Act provides Plaintiff with a cause of action for

claims grounded in the Supremacy Clause or the Contracts Clause. As a result,

Plaintiff is unlikely to succeed because it has not pleaded any viable cause of action.

> 1.    **Plaintiff lacks a cause of action for its Supremacy Clause claims.**

"[T]he Supremacy Clause . . . do[es] not secure rights cognizable under

§ 1983. . . . Thus, § 1983 does not provide a remedy for claims resulting from

violations of . . . the Supremacy Clause." *J & J Anderson, Inc. v. Town of Erie*, 767

F.2d 1469, 1476–77 (10th Cir. 1985), *abrogated on other grounds by Dennis v.*

*Higgins*, 498 U.S. 439 (1991); *see also, e.g.*, *Golden State Transit Corp. v. City of Los*

*Angeles*, 493 U.S. 103, 107 (1989) ("Respondent argues that the Supremacy Clause,

of its own force, does not create rights enforceable under § 1983. We agree.").

Similarly, "the Declaratory Judgment Act does not provide an independent federal

cause of action." *Nero v. Oklahoma*, No. 22-6121, 2022 WL 14423872, at *2 (10th

Cir. Oct. 25, 2022) (citing *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671–74

(1950) (describing "limited procedural purpose of the Declaratory Judgment Act")).

Nor can Plaintiff assert its claims under the Supremacy Clause itself. The

Supremacy Clause "creates a rule of decision," but it "does not create a cause of

---

[5] Plaintiff also cites 28 U.S.C. § 2412, which allows costs and fees in civil actions
brought by or against the United States or its agencies or officials. That statute has
no relevance here.

action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015); *see also Green Room LLC v. Wyoming*, 157 F.4th 1196, 1206 (10th Cir. 2025) (same). Having failed to plead any viable cause of action, Plaintiff is unlikely to succeed on the merits of its Supremacy Clause claims.

Though not pleaded anywhere in its complaint, Plaintiff may argue that it seeks to assert its Supremacy Clause claims in equity. Since Plaintiff's complaint says otherwise—asserting that it seeks relief "on all claims pursuant to [the Declaratory Judgment Act] and 42 U.S.C. § 1983"—this Court should not consider granting relief on a claim outside the complaint. Compl. ¶ 14. But even if this deficiency could be overlooked, any purported equitable claims would fail, because Plaintiff has not identified any federal substantive right to support an equitable Supremacy Clause claim.

To determine whether a plaintiff has a cause of action—including in equity—courts must first determine "what alleged substantive rights the plaintiff is seeking to vindicate."[6] *Nat'l Assoc. of Indus. Bankers v. Weiser*, 737 F. Supp. 3d 1113, 1126 (D. Colo. 2024) ("*NAIB*"), *rev'd on other grounds*, 159 F.4th 694 (10th Cir. 2025), *vacated on other grounds*, 171 F.4th 1203 (10th Cir. 2026); *see also Green Room*

---

[6] Courts in this circuit apply the substantive-rights requirement to plaintiffs that invoke the Supremacy Clause to prevent state officers from enforcing state laws against them. *See NAIB*, 737 F. Supp. 3d at 1121, 1126 (applying substantive-rights inquiry where plaintiffs invoked Supremacy Clause to prevent state officials from applying state interest-rate caps); *Green Room LLC*, 157 F.4th at 1202, 1207 n.4 (explaining substantive-rights requirement would apply in preemption challenge by hemp businesses to state law regulating them).

*LLC*, 157 F.4th at 1207 n.4 (observing that "[u]nder this circuit's precedent any [equity] claim would be subject to the same substantive-right requirement as their § 1983 claim" (citing *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 903 (10th Cir. 2017)).[7] Here, Plaintiff has identified none. As discussed above, the Supremacy Clause "creates a rule of decision," but does not confer on Plaintiff any substantive rights. *Armstrong*, 575 U.S. at 324. Nor do the federal immigration statutes Plaintiff cites. *See* Compl. ¶ 5. Those laws impose obligations on federal officials concerning immigrant detention and empower them to enter into contracts to fulfill their duties, but they do not confer any rights or benefits on detention contractors. *Compare NAIB*, 737 F. Supp. 3d at 1127 (concluding plaintiffs sought to vindicate their right to charge interest at a rate specified by federal law).

Because Plaintiff does not seek to vindicate its own federal rights through its Supremacy Clause claims—and lacks any freestanding right under the Supremacy Clause to enforce it—Plaintiff's claims based in the Supremacy Clause are unlikely to succeed on the merits.

### 2. Plaintiff lacks a cause of action for its Contracts Clause claim.

Plaintiff has similarly failed to plead any viable cause of action for its Contracts Clause claim. Again, Plaintiff relies solely on the Declaratory Judgment

---

[7] Though the court in *Green Room* "express[ed] [its] discomfort" with this precedent, it deemed it binding. 157 F.4th at 1207 n.4.

Act and § 1983 to support this claim. But as discussed above, the Declaratory

Judgment Act does not provide a cause of action. *Nero*, 2022 WL 14423872, at \*2.

Nor can Plaintiff rely on § 1983 to challenge HB26-1276 as an alleged

impairment of its contract. *See Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir.

2017) ("[A]n alleged Contracts Clause violation cannot give rise to a cause of action

under § 1983."); *Crosby v. City of Gastonia*, 635 F.3d 634, 641 (4th Cir. 2011) (same).

The Contracts Clause confers rights on individuals "only indirectly and

incidentally." *Carter v. Greenhow*, 114 U.S. 317, 322 (1885) (addressing predecessor

statute to § 1983). An individual may invoke the Contracts Clause in an action

seeking "the enforcement of his rights under his contract." *Id.*; *see Kaminski*, 865

F.3d at 346 ("The remedy is not a private cause of action against the state official

responsible for the contractual impairment," but to invoke the Contracts Clause "in

a suit 'to vindicate his rights under a contract.'"). But the clause does not confer

individual rights that could support a § 1983 action challenging the state's alleged

impairment of a contract.[8] *See Kaminski*, 865 F.3d at 347; *Crosby*, 635 F.3d at 641;

*but see S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (per

curiam) (allowing Contracts Clause claim under § 1983).[9] Thus, Plaintiff has not

---

[8] Plaintiff could also assert the Contracts Clause, or any other alleged constitutional
infirmity, as a defense in any hypothetical enforcement action.

[9] *Southern California Gas* relied on a footnote in *Dennis*, 498 U.S. 439, in which the
Supreme Court held § 1983 actions are available for Commerce Clause violations.
Responding to an argument by the dissent, the *Dennis* Court described *Carter* as a
case in which the plaintiff's pleading "was not to redress deprivation of the right
secured to him by that clause of the Constitution [the contract clause], to which he

pleaded any viable cause of action to support its Contracts Clause claim, which is unlikely to succeed on the merits.

## C.  HB26-1276 does not violate the intergovernmental immunity doctrine.

Under the Supremacy Clause, the intergovernmental immunity doctrine prohibits state laws that either "'regulat[e] the United States directly or discriminat[e] against the Federal Government or those with whom it deals' (*e.g.*, contractors)." *United States v. Washington*, 596 U.S. 832, 838–39 (2022) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion)). Plaintiff has failed to show a likelihood of success under either theory.

### 1.  HB26-1276 does not directly regulate the United States.

A state statute directly regulates the federal government if it regulates "the United States itself, or . . . an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities." *United States v. New Mexico*, 455 U.S. 720, 735 (1982). As a result, a private company that contracts with the federal government is not shielded from direct regulation unless it is "so incorporated into the government structure" that it "actually stands in the Government's shoes." *Id.* at 735–36 (citation modified). In

---

had chosen not to resort." *Id.* at 451 n.9 (citation modified). But the "right secured" to the plaintiff in *Carter* was not a freestanding right under the Contracts Clause— it was the right *in an action to vindicate the party's rights under the contract* to a judicial determination declaring void any state action allegedly impairing the contractual rights the party sought to enforce. *Carter*, 114 U.S. at 322. And it was this right to which the plaintiff in *Carter* had "chosen not to resort." *Id.*

16

other words, "[a] state has greater ability to regulate a contractor of the federal government than to regulate the government itself," and "[t]he scope of a federal contractor's protection from state law under the Supremacy Clause is substantially narrower than that of a federal employee or other federal instrumentality." *Inslee,* 151 F.4th at 1116 (quoting *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 755 (9th Cir. 2022)).

Plaintiff does not argue that HB26-1276 regulates the federal government— nor can it given HB26-1276's plain exclusion for "facilities operated directly by the federal government." HB26-1276 § 3. Plaintiff similarly does not argue that it is "so closely connected to the Government that the two cannot realistically be viewed as separate entities." *New Mexico*, 455 U.S. at 735. On this basis alone, Plaintiff has shown no likelihood of success on this claim.

Rather than engage the applicable framework, Plaintiff argues that "there is no distinction between state regulation of federal employees and state regulation of private contractors carrying out federal operations." Mot. at 10. But the cases cited by Plaintiff were all well before those cited above, including the Supreme Court's decision in *New Mexico*. Plaintiff's reliance on *Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014), is similarly misplaced and does not change the framework outlined above (nor could it as a Ninth Circuit opinion). In *Boeing*, the Ninth Circuit held that a California state statute that compelled contamination cleanup at the Santa Susana Field Laboratory site by the "responsible party" directly regulated the

17

federal government. *Id.* at 839. Although the land was owned by Boeing, the federal

government was responsible for the pollution and cleanup, and the California

statute applied more stringent requirements than federal law. *Id. Boeing*, therefore,

does not support Plaintiff's claim that HB26-1276 directly regulates the United

States in violation of the intergovernmental immunity doctrine. *GEO Group*, 151

F.4th at 1116 (distinguishing *Boeing* on this same basis).

### 2.    HB26-1276 does not discriminate against the federal government.

Under the Supremacy Clause, a state law discriminates against the federal

government or its contractors if it "single[s them] out" for less favorable

"treatment," *Washington v. United States*, 460 U.S. 536, 546 (1983), or if it regulates

them unfavorably on some basis related to their governmental "status," *North

Dakota*, 495 U.S. at 438. The "important consideration" is whether the state has

"singled out contractors who work for the United States for discriminatory

treatment." *Washington*, 460 U.S. at 544, 546. In determining whether a state law

discriminates against the federal government, a court must consider "the entire

regulatory system" as it is "not appropriate to look to the most narrow provision

addressing the Government or those with whom it deals." *North Dakota*, 495 U.S. at

435, 438. "A state provision that appears to treat the Government differently on the

18

most specific level of analysis may, in its broader regulatory context, not be discriminatory." *Id.* at 438.

Colorado's regulatory and inspection regime, as amended by HB26-1276, does not discriminate against the federal government or its contractors. First, CDPHE possesses a unified statutory authority to set standards and inspect *all* penal institutions, including correctional facilities operated by or under contract with the Colorado Department of Corrections. *See* C.R.S. § 25-1.5-101(1)(i)(I)(A)–(B). HB26-1276 did not change that, and Plaintiff's operation of AIPC will continue to be subject to identical inspections as other penal institutions. Lawrence Decl. ¶ 13. Furthermore, just like immigration detention facilities, Colorado Department of Corrections facilities must be inspected annually, C.R.S. § 25-1.5-101(1)(i)(I)(C), and CDPHE may conduct as many unannounced inspections as it deems necessary, *id.* Lawerence Decl. ¶ 10. Finally, all penal institutions, including immigration detention facilities, are subject to identical regulations concerning food safety standards; drinking water quality standards; confinement conditions; sewage and solid waste disposal; the availability of toilets, lavatories, and showers; insect and rodent control; the bedding, linen, and clothing provided to detainees; fire protection; and standards of care provided to individuals detained within a facility. Lawrence Decl. ¶ 7; *see also* 6 C.C.R. 1010-13. At bottom, Plaintiff's primary concern is it will face new substantive requirements, but as detailed earlier, no such

19

requirements exist, and it is impossible to predetermine that any hypothetical, nonexistent requirements will discriminate.

Finally, Plaintiff points to HB26-1276's requirement that it pay the cost of inspections of AIPC and the threat of a civil penalty for refusing an inspection (Mot. at 14–15), but this Court must consider the "broader regulatory context," not minor differences between how facilities reimburse CDPHE or how Colorado ensures facilities' compliance with inspection requirements. *See North Dakota*, 495 U.S. at 438. The Colorado Department of Corrections reimburses CDPHE for the cost of inspections of its facilities—including those operated by private contractors. Lawrence Decl. ¶ 15. HB26-1276 thus creates parity.[10] Likewise, state prison contractors are required by law and the terms of their contracts to facilitate inspections of any facility they operate for the Colorado Department of Corrections. Karstens Decl. ¶ 3. Those contractors are thus subject to grave consequences if they refuse, including all contractual remedies or even the termination of contracts, a penalty for refusal worth far more than $50,000. *Id.* ¶ 4. That HB26-1276 imposes a different compliance regime with a less burdensome maximum penalty for facilities housing civil immigration detainees does not show that Colorado has "singled out" these contractors for less favorable treatment. The Supremacy Clause does not

---

[10] It does not matter that the Colorado Department of Corrections reimburses CDPHE for inspecting its contract facilities, rather than requiring contractors to reimburse CDPHE directly. The Colorado legislature does not need to upset that practice and make Colorado's private prison contractors directly reimburse CDPHE to comply with the Supremacy Clause.

require the legislature to impose HB26-1276's same penalty scheme on state prison

contractors—which would be unnecessary and duplicative—simply to make

HB26-1276 constitutional.

In sum, when evaluating HB26-1276 in the context of the broader regulatory

scheme, there is no discrimination against the federal government.

###    D.    Federal law does not preempt HB26-1276.

"[A]ny preemption inquiry begins with the presumption that federal law does

not override 'the historic police powers of the States,' without the 'clear and

manifest' intent of Congress." *Bradshaw v. Am. Airlines, Inc.*, 123 F.4th 1168, 1173

(10th Cir. 2024) (quoting *Arizona v. United States*, 567 U.S. 387, 400 (2012)). "The

party claiming preemption bears the burden of showing with specificity that

Congress intended to preempt state law." *Mount Olivet Cemetery Ass'n v. Salt Lake

City*, 164 F.3d 480, 489 n.4 (10th Cir. 1998). That party likewise "bear[s] the burden

of showing that federal and state law conflict." *Cook v. Rockwell Int'l Corp.*, 618

F.3d 1127, 1143 (10th Cir. 2010). Plaintiff has not carried "the burden of showing

with specificity" that preemption applies under either a field preemption or conflict

preemption theory. *See also Wyeth v. Levine*, 555 U.S. 555, 565 (2009)

(Congressional intent is "'the ultimate touchstone in every pre-emption case.'"

(citation omitted)).

21

### 1.    Field preemption does not apply.

Field preemption applies where "'a framework of regulation' of a field is 'so pervasive' that it leaves no space for state supplementation or where the federal interest is 'so dominant' that the existence of a federal scheme can 'be assumed to preclude enforcement of state laws on the same subject.'" *Bradshaw*, 123 F.4th at 1173 (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). Field preemption is found only "[i]n rare cases." *Kansas v. Garcia*, 589 U.S. 191, 208 (2020).

Plaintiff recites various federal statutes to argue that Congress has occupied the entire field of immigration detention, where, it asserts, federal interests dominate. Mot. at 15–18. These statutes, however, do not create a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Rather, the statutes Plaintiff cites simply provide that the Secretary of Homeland Security may arrange for detention facilities, 8 U.S.C. § 1231(g)(1), and that the Secretary and ICE may enter into contracts for this purpose. 6 U.S.C. § 112(b)(2); 18 U.S.C. § 4013; 28 U.S.C. § 530C(a)(4). None "demonstrate *any* intent, let alone 'clear and manifest,' that Congress intended to supersede" the states' "general authority to ensure the health and welfare of inmates and detainees in facilities within its borders." *Inslee*, 151 F.4th at 1123 (quoting *United States v. California*, 921 F.3d 865, 886 (9th Cir. 2019)). Indeed, in recognition of the states' authority, courts have specifically rejected that field

22

preemption precludes states from enacting legislation such as HB26-1276 that permit inspections to ensure sanitary, hygienic, and safe conditions for detainees. *See id.* (rejecting that field preemption bars law concerning inspecting immigration detention centers); *California*, 921 F.3d at 875 (same).

Plaintiff's reliance on ICE's Performance-Based National Detention Standards ("PBNDS") to fill in the gaps left by the federal statutes falls flat. *See* Mot. at 16–17. The PBNDS are detention standards issued by ICE; they do not have the force of law. *Owino v. CoreCivic, Inc.*, No. 17-cv-1112 2018 WL 2193644, at *18 n.10 (S.D. Cal. May 14, 2018) ("The ICE PBNDS is a federal agency publication and cannot provide congressional intent."). In any event, the PBNDS does not state that the policies are intended to preempt state law; in fact, it suggests the opposite. *See Hillsborough County v. Automated Med. Lab., Inc.*, 471 U.S. 707, 718 (1985) ("Given the presumption that state and local regulation related to matters of health and safety can normally coexist with federal regulations, we will seldom infer, solely from the comprehensiveness of federal regulations, an intent to pre-empt in its entirety a field related to health and safety."). The PBNDS Preface states a desire for "continued collaboration within ICE [and] with state and local governments." PBNDS at i.[11] The PBNDS also explicitly demands compliance with state and local laws. *Id.* at 19 ("Compliance with all applicable federal, state and local safety and sanitation laws shall be ensured by documented internal and external inspections,

---

[11] https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf

23

and by corrective action when indicated."). And tellingly, Plaintiff's contract with

ICE requires compliance with state law. *See, e.g.,* AIPC Contract at 33, 46

(mandating Plaintiff's compliance with state or local law and inspections); *see also*

*California*, 921 F.3d at 886 n.10 (recognizing that contractual provisions

contemplate state oversight, cutting against field preemption). Thus, far from

preempting state law, the PBNDS reflects co-existence with state law.

Without citing any supporting authority, Plaintiff asserts that "where federal

interests are paramount, state regulation is preempted even absent a

comprehensive regulatory scheme," and insists that "conditions of confinement for

immigration detainees" is one such area of federal interest. Mot. at 17–18. To the

contrary, health and safety is an area of states' historic police powers, *Medtronic,*

*Inc. v. Lohr*, 518 U.S. 470, 485 (1996), which is not preempted unless doing so was

Congress's "clear and manifest purpose." *See Arizona*, 567 U.S. at 400 (citing *Rice*,

331 U.S. at 230). But given the sparse statutory scheme, this is not a field where

"the breadth of these laws illustrates an overwhelmingly dominant federal interest

in the field." *Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d

1250, 1264 (11th Cir. 2012). In sum, Plaintiff has not shown any clear and manifest

purpose by Congress to preempt HB26-1276.

### 2.    Conflict preemption does not apply.

Conflict preemption "occurs either when compliance with both the federal

and state laws is a physical impossibility, or when the state law stands as an

24

obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Mount Olivet Cemetery*, 164 F.3d at 486. Plaintiff has shown neither.

Plaintiff argues that HB26-1276's grant of authority to CDPHE to conduct inspections conflicts with its AIPC Contract providing that the federal government may conduct inspections, as well as the federal statute creating the "Immigration Detention Ombudsman," who has "unfettered access" to facilities for inspections. Mot. at 19. This argument fails several times over. The AIPC Contract is not a federal law and, therefore, cannot be the basis for preemption. *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 99 (1995) (agency policy documents "do not have the force and effect of law"). Moreover, AIPC may be subject to inspections from both federal and state authorities without any conflict—Plaintiff offers no explanation how allowing both sets of inspections is a "physical impossibility." And notably, DHS apparently closed the Office of the Immigration Detention Ombudsman, resulting in no conflict there.[12]

Plaintiff also argues that HB26-1276's grant of authority to CDPHE to initiate rulemaking mandating annual reporting or to establish medical staffing requirements might conflict with its AIPC Contract or the PBNDS, but again, neither the AIPC Contract nor the PBNDS has the force of law. Moreover, should CDPHE ultimately choose to exercise this authority, Plaintiff fails to explain why it

---

[12] Rebecca Beitsch, The Hill, *DHS Closes Office of Immigration Detention Watchdog* (May 5, 2026), https://thehill.com/homenews/5864182-oido-dhs-watchdog-closure/.

could not make periodic reports to both ICE and Colorado, or how the medical staffing requirement might create an actual conflict with its contractual responsibilities. Plaintiff cannot do so because its AIPC Contract both contemplates *and resolves* overlapping and even conflicting standards: "[i]n cases where there is a conflict in standards, the most stringent shall apply." AIPC Contract at 33.

Finally, Plaintiff argues that HB26-1276 is an obstacle to meeting congressional objectives of ICE having broad authority to issue uniform standards that apply nationally. Mot. at 20. But preemption is not a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011). The bar is especially high here where historic police powers are at issue, and Congress's purpose to preempt must be "clear and manifest." *Arizona*, 567 U.S. at 400. And in any event, any protestations of an obstacle are belied by ICE specifically recognizing, in both the PBNDS and the AIPC Contract, states' authority over detention facilities. *See above*; *see also Inslee*, 151 F.4th at 1124 (rejecting obstacle preemption "especially when [GEO Group's] own contract with ICE contemplates more stringent state requirements in the first place").

In sum, "conflict pre-emption . . . turns on the identification of 'actual conflict,'" *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 884 (2000) (quoting *English v. Gen Elec. Co.*, 496 U.S. 72, 78–79 (1990)). Plaintiff has identified none.

26

### E.    HB26-1276 does not violate the Contracts Clause.

The Contracts Clause provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const., Art. I, § 10, cl. 1. "[N]ot all laws affecting pre-existing contracts violate the Clause." *Sveen v. Melin*, 584 U.S. 811, 819 (2018). Courts must apply a two-step test, inquiring first whether a state law has "operated as a substantial impairment of a contractual relationship." *Id.* Even if a state law substantially impairs a contract, the law will nonetheless survive scrutiny if it is "drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* (quoting *Energy Rsrvs. Grp., Inc. v. Kan. Power & Light Co.,* 459 U.S. 400, 411–412 (1983)).

Plaintiff's Contracts Clause claim fails at the first step because Plaintiff cannot show any impairment of its contract, let alone a substantial one. Plaintiff contends that it cannot comply with HB26-1276 without breaching contractual provisions concerning facility access, records, and inspections. *See* Mot. at 21. However, its contract expressly requires Plaintiff to comply with Colorado law, including that Plaintiff "participate in responding to all requests for information and inspection" by Colorado regulatory agencies. AIPC Contract at 47. Plaintiff has long recognized this reality through its submission to CDPHE's inspections. Furthermore, even if Plaintiff could identify a conflict with HB26-1276's inspection or rulemaking provisions, the AIPC Contract directs Plaintiff to comply with "the most stringent." *Id.* at 33.

27

Plaintiff also contends that HB26-1276 might impose additional costs. But foreseeable changes to existing laws do not substantially impair the relationship between contracting parties, particularly in "heavily regulated" areas. *DC Auto., Inc. v. Kia Motors America, Inc.*, 411 F. Supp. 3d 1137, 1144 (D. Colo. 2019). Plaintiff's contract acknowledges that possibility and assigned the risk of it "solely" to Plaintiff. *See* AIPC Contract at 33. Given that, Plaintiff simply cannot demonstrate any substantial impairment of its contract. Finally, even if HB26-1276 did substantially impair Plaintiff's contract, the law nonetheless survives as an appropriate and reasonable means to achieve a significant and legitimate public purpose, *see Sveen* 584 U.S. at 819, as explained *infra*, discussing the remaining injunction factors.

## II.    Plaintiff has not established irreparable harm.

Plaintiff must prove that it will suffer irreparable harm. *Schrier*, 427 F.3d at 1258. It cannot. Plaintiff claims that HB26-1276 will require Plaintiff to "implement burdensome operational changes at AIPC" or "forc[e it] to breach its contract." Mot. at 22. But that is based on the mistaken belief that HB26-1276 directly imposes regulatory requirements when, in fact, it merely provides CDPHE discretionary rulemaking authority not yet exercised. Lawrence Decl. ¶ 18; *supra* Section III.a. Similarly, CDPHE must use the regulatory process to set fees for inspections. Lawrence Decl. ¶ 18. Plaintiff will have every opportunity to participate in the

rulemaking process and could seek judicial review of any final regulations. *Id.* ¶ 25;

*see also* C.R.S. §§ 24-4-106, 25-1-113.

Setting aside Plaintiff's misreading of the statute, at best it has identified a

"speculative possibility" of harm depending entirely on the outcome of future events,

proof far short of its burden to justify the extraordinary relief it seeks. *See Uber*

*Tech., Inc. v. Moss*, No. 25-cv-00096-DDD, 2025 WL 1420940, *4 (D. Colo. Jan. 31,

2025).

Plaintiff similarly cannot show irreparable harm caused by HB26-1276's

inspection provisions. Plaintiff regularly submits to inspections by CDPHE and the

substance of those inspections will remain the same. Lawrence Decl. ¶¶ 12–13. This

belies Plaintiff's argument that submitting to inspections will force it to breach its

contract. HB26-1276 does not change CDPHE's existing authority to inspect AIPC

unannounced, whenever it wants. That HB26-1276 mandates a minimum of five

inspections per year is of no consequence because Plaintiff will remain subject to

CDPHE's authority to inspect as frequently as it chooses.

Finally, Plaintiff's suggestion that HB26-1276 will inflict a constitutional

injury, which is somehow necessarily irreparable, is entirely misplaced. Neither the

Supremacy Clause nor the Contracts Clause involve individual rights. *See supra*,

Section III.b; *Leachco, Inc. v. CPSC*, 103 F.4th 748, 753–54 (10th Cir. 2024) (cases

finding violation of constitutional rights alone constitute irreparable harm are

"limited to cases involving individual rights" (citation omitted)).

29

This Court should deny the motion because Plaintiff failed to establish irreparable injury.

## III.    The balance of equities and public interest strongly favor Colorado.

The final two factors—the balance of equities and the public interest—also favor Colorado. Colorado has a strong interest in ensuring that all facilities meet its minimum health and safety standards. *See California*, 921 F.3d at 894 (states retain historic and undisputed "authority to regulate the conditions of detainees housed within [their] borders"). These health and safety standards not only protect detainees, but also the general public. Rooting out the types of unsanitary conditions that allow communicable illness to flourish is necessary to prevent disease from spreading to surrounding communities through workers and visitors. *See* Lawrence Decl. ¶ 8.

Contrary to Plaintiff's contention, HB26-1276—which does not regulate any federal agency—will have no impact on the federal government's "interest in uniform *enforcement* of the nation's immigration laws." Mot. at 24 (emphasis added). Rather, HB26-1276 advances Colorado's interest in ensuring the health and safety of individuals within detention facilities within its borders. Plaintiff's argument that this legitimate interest is "addressed" by the PBNDS, *see* Mot. at 24, fn. 16, is belied by DHS-OIG's findings at AIPC. The public interest and balance of the equities strongly favor Colorado and respecting duly enacted laws on critical public health issues.

30

## IV.    The court should not enter a permanent injunction or final judgment.

Under Rule 65(a)(2), a court may exercise its discretion to advance trial on the merits and consolidate a preliminary injunction hearing with a permanent injunction hearing. *See Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1187 (10th Cir. 1975). However, courts should enter a permanent injunction at a preliminary stage of litigation only under "unique circumstances" where "'the facts are established or of no controlling relevance,'" and it is clear that the moving party will succeed on the merits, not just that it is substantially likely to do so. *Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence*, 22 F.4th 892, 908–09 (10th Cir. 2022) (citation omitted). For instance, the Tenth Circuit has held that unique circumstances warranted judgment on the merits where the court had a full record before it that was "unusually complete" because the district court held a two-day evidentiary hearing after an earlier remand for supplemental findings. *Id.* at 909.

This case does not present those unique circumstances. To begin with, Defendants have not yet answered. Plaintiff's Motion cites *Banks v. Gonzales*, 415 F. Supp. 2d 1248, 1252 n.4 (N.D. Okla. 2006), for the proposition that where there are no factual issues, the court can simultaneously address a motion to dismiss and a motion for a permanent injunction. But in that case the court did so to grant defendants' motion to dismiss the operative complaint, which necessarily warranted denial of plaintiffs' motion. *Id.* at 1268.

31

Furthermore, the matters here are not purely legal and instead this Court must evaluate and consider facts, such as Plaintiff's prior submission to Colorado's regulatory and inspection authority, as well as CDPHE's rulemaking process and the hypothetical harm Plaintiff might experience depending on the outcome of any future rulemaking. Given that, should this Court find in favor of Plaintiff and grant its motion, it should do no more than enter a preliminary injunction and allow the parties to build a complete record.

Likewise, any relief granted must be narrowly tailored and should make clear that it does not affect any of CDPHE's pre-existing authority to regulate health and safety or conduct inspections, which Plaintiff has not challenged. The complaint is limited to HB26-1276, and any relief must be strictly limited to particular provisions of HB26-1276.

## CONCLUSION

Plaintiff's motion for preliminary injunction should be denied.

Dated: July 1, 2026                    Respectfully submitted,


**PHILIP J. WEISER**
Attorney General of Colorado

/s/ Gabe Podesta
Michael Landis, *First Assistant Attorney*
  *General*
Talia Kraemer, *Assistant Solicitor General*
Nora Passamanek, *Senior Assistant Attorney*
  *General*
Gabe Podesta, *Senior Assistant Attorney*
  *General*
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
Gabe.Podesta@coag.gov

*Counsel for Jill Hunsaker Ryan, Jeff*
*Lawrence, and Philip Weiser*

33

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing paper contains 7,796 words. State Defendants moved to extend the length limitation to 7,850 words to provide equal space with Plaintiff's motion, which was filed prior to assignment to this Court. ECF No. 18. The Court has not yet ruled on that motion.

/s/ Gabe Podesta
Gabe Podesta
*Senior Assistant Attorney General*

34

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Gabe Podesta
Gabe Podesta
*Senior Assistant Attorney General*