UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:26-cv-02533-DDD-SBP

THE GEO GROUP, INC.,

        Plaintiff,

v.

JILL HUNSAKER RYAN, Executive Director of the Colorado
Department of Public Health & Environment (CDPHE), in her
official capacity;

JEFF LAWRENCE, Director of the Environmental Health and
Sustainability Division of CDPHE, in his official capacity;

PHIL WEISER, Colorado Attorney General, in his official
capacity; and

KELLY WEIDENBACH, Executive Director of the Adams
County Health Department, in her official capacity;

        Defendants.

---

**THE GEO GROUP, INC.'S REPLY IN SUPPORT OF
ITS MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.      GEO is likely to succeed on the merits. ............................................................... 2

        A.      GEO's claims are justiciable. ................................................................... 2

        B.      GEO has stated claims for injunctive and declaratory relief. ................. 4

        C.      GEO is likely to succeed on its intergovernmental-immunity claims. ... 7

                1.      HB 1276 directly regulates the federal government. .................. 7

                2.      HB 1276 discriminates against the federal government. ........... 9

        D.      GEO is likely to succeed on its preemption claims. ............................. 11

        E.      GEO is likely to succeed on its Contracts Clause claim. ...................... 14

        F.      Section 2 of HB 1276 is unconstitutional and non-severable. ............. 15

II.     The remaining factors favor preliminary injunctive relief. ............................... 16

III.    A permanent injunction and final judgment are warranted. .............................. 18

CONCLUSION ............................................................................................................. 18

CERTIFICATE OF WORD COUNT ........................................................................... 20

CERTIFICATE OF SERVICE (CM/ECF) .................................................................... 21

# TABLE OF AUTHORITIES

**CASES**

*Arizona v. United States*,
  567 U.S. 387 (2012).................................................................................................. 11

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)................................................................................................. 5, 6

*Baca v. Colo. Dep't of State*,
  935 F.3d 887 (10th Cir. 2019) ................................................................................. 6, 7

*Banks v. Gonzalez*,
  415 F. Supp. 2d 1248 (N.D. Okla. 2006).................................................................. 18

*Boeing Co. v. Movassaghi*,
  768 F.3d 832 (9th Cir. 2014) ................................................................................... 7, 8

*Carter v. Greenhow*,
  114 U.S. 317 (1885)..................................................................................................... 7

*Chamber of Com. of U.S. v. Edmondson*,
  594 F.3d 742 (10th Cir. 2010) .................................................................................. 17

*Comm. of Cent. Am. Refugees v. INS*,
  795 F.2d 1434 (9th Cir. 1986) .................................................................................. 12

*ConocoPhillips Alaska, Inc. v. Alaska Oil & Gas Conserv. Comm'n*,
  177 F.4th 964 (9th Cir. 2026) ................................................................................... 12

*Consumer Data Indus. Ass'n v. King*,
  678 F.3d 898 (10th Cir. 2012) .................................................................................... 3

*CoreCivic, Inc. v. Gov. of New Jersey*,
  145 F.4th 315 (3d Cir. 2025) .......................................................................... 7, 8, 11

*Dennis v. Higgins*,
  498 U.S. 439 (1991)................................................................................................. 6, 7

*DirecTV, Inc. v. Imburgia*,
  577 U.S. 47 (2015).................................................................................................... 13

*Dream Defs. v. Gov. of the State of Fla.*,
  57 F.4th 879 (11th Cir. 2023) ..................................................................................... 3

*Free the Nipple-Fort Collins v. City of Fort Collins*,
    916 F.3d 792 (10th Cir. 2019) ................................................................................. 16

*Gallo v. District of Columbia*,
    2025 WL 1446283 (D.C. Cir. May 20, 2025) ............................................................. 6

*Garfield Cnty., Utah v. Trump*,
    __ F.4th __, 2026 WL 1801091
    (10th Cir. Jun. 23, 2026) .................................................................................. 5, 6, 16

*Gartrell Constr. Inc. v. Aubry*,
    940 F.2d 437 (9th Cir. 1991) ................................................................................. 13

*GEO Grp., Inc. v. Inslee*,
    151 F.4th 1107 (9th Cir. 2025) ............................................................................ 4, 10

*GEO Grp., Inc. v. Inslee*,
    166 F.4th 1188 (9th Cir. 2026) .......................................................................... 1, 9, 11

*GEO Grp., Inc. v. Newsom*,
    50 F.4th 745 (9th Cir. 2022) ................................................................................. 12

*Green Room LLC v. Wyoming*,
    157 F.4th 1196 (10th Cir. 2025) ..................................................................... 5, 6, 16

*Heights Apartments, LLC v. Walz*,
    30 F.4th 720 (8th Cir. 2022) .................................................................................. 7

*Hencely v. Fluor Corp.*,
    146 S. Ct. 1086 (2026) ........................................................................................... 8

*Leachco, Inc. v. CPSC*,
    103 F.4th 748 (10th Cir. 2024) ............................................................................. 16

*McClendon v. City of Albuquerque*,
    79 F.3d 1014 (10th Cir. 1996) .............................................................................. 17

*Nat'l Ass'n of Indus. Bankers v. Weiser*,
    159 F.4th 694 (10th Cir. 2025) ............................................................................... 5

*Nat'l Assoc. for Gun Rights v. Polis*,
    173 F.4th 1317 (10th Cir. 2026) ............................................................................. 3

*Planned Parenthood of Hous. & Se. Tex. v. Sanchez*,
    403 F.3d 324 (5th Cir. 2005) .................................................................................. 5

*Rice v. Santa Fe Elevator Corp.*,
  331 U.S. 218 (1947) .................................................................................................... 12

*Rio Grande Silvery Minnow v. Keys*,
  333 F.3d 1109 (10th Cir. 2003) ................................................................................... 4

*S. Cal. Gas Co. v. City of Santa Ana*,
  336 F.3d 885 (9th Cir. 2003) ....................................................................................... 6

*Safe Streets All. v. Hickenlooper*,
  859 F.3d 865 (10th Cir. 2017) ................................................................................. 5, 6

*Sanchez v. Torrez*,
  173 F.4th 1202 (10th Cir. 2026) ................................................................................. 3

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ................................................................................................. 3, 4

*United States v. New Mexico*,
  455 U.S. 720 (1982) ..................................................................................................... 7

*United States v. South Carolina*,
  720 F.3d 518 (4th Cir. 2013) ..................................................................................... 11

*United States v. Washington*,
  596 U.S. 832 (2022) ..................................................................................................... 9

*Upside Foods Inc. v. Comm'r, Fla. Dep't of Ag.*,
  171 F.4th 1239 (11th Cir. 2026) ............................................................................. 4, 6

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ................................................................................... 17

*Washington v. Geo Grp., Inc.*,
  No. 17-cv-5806 (W.D. Wash. Aug. 20, 2019) ......................................................... 13

*Washington v. Geo Grp., Inc.*,
  No. 26-6466 (D.N.J. Jun. 12, 2026) .......................................................................... 12

*Washington v. United States*,
  460 U.S. 536 (1983) ................................................................................................... 10

**STATUTES**

6 U.S.C. § 112 ............................................................................................................... 11

8 U.S.C. § 1231 ................................................................................................................. 11

18 U.S.C. § 4013 ............................................................................................................... 11

28 U.S.C. § 530C .............................................................................................................. 11

42 U.S.C. § 1983 ................................................................................................................. 4

Colo. Rev. Stat. § 25-1-506 ...................................................................................... 9, 15, 17

Colo. Rev. Stat. § 25-1.5-101 ................................................................................... passim

**INTRODUCTION**

HB 1276[1] openly targets the only federally contracted immigration detention facility in Colorado, singling out that facility for a comprehensive regime of substantive requirements, mandatory inspections, and monetary burdens that apply to no other facility in the state. HB 1276 itself acknowledges that its mandates would be invalid if applied to a detention facility operated "directly by the federal government." Colo. Rev. Stat. § 25-1.5-101(1)(i)(I)(D), (1)(dd). Few laws are so brazen in their derogation of the Supremacy Clause; this is an "open-and-shut case." *GEO Grp., Inc. v. Inslee*, 166 F.4th 1188, 1192 (9th Cir. 2026) (Bumatay, J., dissenting).

The State[2] hardly defends HB 1276 on its own terms. Instead, it argues that GEO's challenge is premature because CDPHE has not yet promulgated rules under HB 1276. But pre-enforcement review is available in cases precisely like this—especially given that HB 1276's text is clearly unconstitutional as applied to GEO, no matter the content or scope of future rulemaking. The State also contends GEO lacks a statutory cause of action, ignoring settled equitable doctrine on which GEO's challenge plainly relies. Next, the State points to existing, generally applicable regulations as proof of the law's validity, ignoring HB 1276's direct, unmistakable, and targeted interference with federal immigration enforcement and the law's discriminatory targeting of AIPC. Finally, the State misreads generic references to "applicable" state law in GEO's contract (and the incorporated PBNDS) to demonstrate that HB 1276 neither frustrates dominant federal interests nor impairs the contract. But this elides the irreconcilable

---

[1] This brief uses the same capitalized terms as GEO's motion.

[2] The "State" refers to the CDPHE Defendants and Attorney General Weiser.

1

conflicts HB 1276 creates with federal law and the AIPC contract. The State's arguments falter at every step.

The County[3] treads the same ground. Its only additional argument is that HB 1276's grant of inspection authority to local agencies is constitutional and severable from the rest of the law. But the State cannot single out Colorado's lone federally contracted immigration detention facility for a targeted regime of inspections and other mandates *at all*—whether enforced by CDPHE or local agencies.

The Court should grant GEO's motion and enjoin enforcement of HB 1276.

**ARGUMENT**

**I.    GEO is likely to succeed on the merits.**

**A.    GEO's claims are justiciable.**

The State argues that GEO's challenge is non-justiciable to the extent it concerns regulatory mandates CDPHE will effectuate through future rulemaking. State Opp. 8–11.[4] That misapprehends HB 1276. As both its text and fiscal note make clear, HB 1276 *itself* "requires" AIPC to comply with inspection, reporting, housing, and staffing mandates, and HB 1276 *itself* imposes severe penalties if GEO does not (or cannot) comply. Leg. Council Staff, *Fiscal Note*, *supra*, at 3 (May 5, 2026); *see* Colo. Rev. Stat. § 25-1.5-101(1)(i)(I)(D), (1)(dd)(V)(A). CDPHE's role is not to create those obligations out of whole cloth but to enforce them. HB 1276

---

[3] The "County" refers to Defendant Kelly Weidenbach, Executive Director of the Adams County Health Department.

[4] The State contests the justiciability of only GEO's challenge to "certain rulemaking authority" under HB 1276, conceding that GEO's challenge to the remainder of HB 1276 is justiciable. State Opp. 11.

states only that CDPHE "*may* adopt rules" if it deems rulemaking necessary. Colo. Rev. Stat. §

25-1.5-101(1)(dd)(V)(A).[5] The mandates arise directly from the statute; the question is whether

those mandates (and any rulemaking to enforce them) are constitutional. The State ignores what

HB 1276 actually does. State Opp. 8 (incorrectly stating, "HB26-1276 does not itself impose any

such requirements.").

The pre-enforcement posture raises no justiciability concerns. GEO need not await the

"lengthy process" of rulemaking to vindicate its right not to be subject to HB 1276's mandates.

*See id.* at 8–10. Injury in fact requires only a "substantial *risk* that the harm will occur." *Susan B.*

*Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). In a pre-enforcement action, the plaintiff

must face a "credible threat of prosecution or other consequences flowing from the [law's]

enforcement." *Sanchez v. Torrez*, 173 F.4th 1202, 1213 (10th Cir. 2026). And if enforcement is

credibly threatened, ripeness is not an "obstacle." *Consumer Data Indus. Ass'n v. King*, 678 F.3d

898, 907 (10th Cir. 2012).

Here, GEO faces precisely such a threat because the State has not "'disavowed any

intention of invoking' the statute against" it. *Nat'l Assoc. for Gun Rights v. Polis*, 173 F.4th

1317, 1323 (10th Cir. 2026). To the contrary, the State has "'vigorously defended' the law in

court," making its intention of enforcing HB 1276 clear. *Dream Defs. v. Gov. of the State of Fla.*,

57 F.4th 879, 887 (11th Cir. 2023). Whether CDPHE is "*required* … to adopt … rules" on

"certain topics" under HB 1276—or, more accurately, "may" do so—is beside the point. State

---

[5] All emphases are added unless otherwise indicated.

3

Opp. 9 n.4. CDPHE has never disavowed its intention to enforce the law. *See GEO Grp., Inc. v. Inslee*, 151 F.4th 1107, 1115 (9th Cir. 2025).[6]

Prudential considerations do not change the analysis. State Opp. 10–11. The "fitness" factor is "easily satisfied" because GEO's challenge entails issues that are "purely legal, and will not be clarified by further factual development." *Susan B. Anthony List*, 573 U.S. at 167. Whatever the content of any "rules ultimately adopted by CDPHE," State Opp. 10, the statute's constitutionality can be determined based on its text. The "hardship" factor is likewise satisfied, because immediate relief will both clarify whether rulemaking is necessary and obviate the need to "develop the merits anew" in the future. *Rio Grande Silvery Minnow v. Keys*, 333 F.3d 1109, 1121 (10th Cir. 2003) (examining whether "granting relief would serve a useful purpose," not merely whether "denying relief would impose hardship").

### B.    GEO has stated claims for injunctive and declaratory relief.

Pivoting from justiciability, the State devotes five pages to arguing that GEO's claims are not cognizable under 42 U.S.C. § 1983 or the Declaratory Judgment Act. State Opp. 11–16. But GEO seeks ***injunctive*** relief, and it is "well established that a regulated entity ... has a cause of action in equity to restrain the enforcement of" an unconstitutional law where it would have a defense to the law's enforcement. *Upside Foods Inc. v. Comm'r, Fla. Dep't of Ag.*, 171 F.4th 1239, 1250 (11th Cir. 2026). Whether GEO's complaint uses the word "equity" is immaterial, *contra* State Opp. 13, because it explicitly pleads claims ***sounding in equity***, *e.g.*, Dkt. 1 ¶¶ 1, 2,

---

[6] The Ninth Circuit's standing analysis in *Inslee* did not turn on any statutory language mandating the adoption of certain rules, as the State suggests. *See* State Opp. 9 n.4. The court held that the agency "intends to adopt such rules" and "intends to enforce them against GEO," not that it was required to do so before suit could proceed. *Inslee*, 151 F.4th at 1115.

8; *cf. Nat'l Ass'n of Indus. Bankers v. Weiser*, 159 F.4th 694, 706 (10th Cir. 2025) (complaint

provided "sufficient information for a claim in equity" by alleging state officials were

"unlawfully enforcing a preempted state law"), *vacated on other grounds*, 171 F.4th 1203 (10th

Cir. 2026) (en banc) (per curiam).[7]

The State insists that any "equitable Supremacy Clause claim" must fail because GEO

"has not identified any federal substantive right" it seeks to vindicate. State Opp. 13. The State

mischaracterizes GEO's claims.[8] GEO relies on the "longstanding, equitable doctrine for relief"

affirmed in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015). *See Garfield

Cnty., Utah v. Trump*, __ F.4th __, 2026 WL 1801091, at *9 n.10 (10th Cir. Jun. 23, 2026). As

the Tenth Circuit explained, *Armstrong* recognized an "equitable cause of action for an

injunction against preempted state law without needing to address whether the plaintiff was

invoking a federal right." *Green Room LLC v. Wyoming*, 157 F.4th 1196, 1207 n.4 (10th Cir.

2025). The State argues that the analysis is controlled instead by *Safe Streets Alliance v.

Hickenlooper*, 859 F.3d 865 (10th Cir. 2017). But *Safe Streets*—where private parties

functionally sought to clothe themselves in authority to enforce the criminal prohibitions of the

Controlled Substances Act—has no bearing here. The Tenth Circuit has cautioned courts not to

overread *Safe Streets*. *See Green Room*, 157 F.4th at 1207 n.4. In any event, recent precedent is

---

[7] GEO can cure any purported pleading deficiency through an amended complaint stating simply that its claims "sound in equity under *Ex Parte Young*," should the Court deem that sort of formalistic amendment necessary.

[8] GEO does not "assert its claims under the Supremacy Clause itself." *Contra* State Opp. 12. Its argument that HB 1276 is "incompatible" with federal law is "fundamentally different" and does not implicate any "concern[] that the Supremacy Clause does not of its own force create rights enforceable under § 1983." *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 335 (5th Cir. 2005).

clear that *Safe Streets* is "inapplicable" to equitable claims under *Armstrong. Garfield Cnty.*,

2026 WL 1801091, at \*9 n.10. This case falls under *Armstrong*. GEO has a right to injunctive

relief to avoid being subject to a clearly unconstitutional law.

In any event, GEO properly seeks pre-enforcement declaratory relief concerning the

supremacy of federal law over HB 1276. Not only is such relief available under *Armstrong* even

absent a "substantive federal right," *Green Room*, 157 F.4th at 1207 n.4, but it is "codified in the

Declaratory Judgment Act" itself, *Upside Foods*, 171 F.4th at 1250. Indeed, the "very purpose"

of the Act is to provide relief before actual injury occurs. *Baca v. Colo. Dep't of State*, 935 F.3d

887, 910 (10th Cir. 2019). Authority addressing declaratory relief ***outside*** the pre-enforcement

context is not to the contrary. *See* State Opp. 12.

The State's assertion that GEO lacks a cause of action for its Contracts Clause claim fares

no better. *Id.* at 14–16. Although the Tenth Circuit has not decided whether § 1983 supplies a

cause of action for a Contracts Clause violation, most circuits either hold or assume that it does.

*See Gallo v. District of Columbia*, 2025 WL 1446283, at \*3 (D.C. Cir. May 20, 2025) (per

curiam) (unpublished). Circuits holding otherwise lack a persuasive rationale. The Supreme

Court has held that the rights guaranteed by § 1983 must be "liberally and beneficially

construed," *Dennis v. Higgins*, 498 U.S. 439, 443 (1991), and the Contracts Clause

unambiguously safeguards the right of a contracting party "not to have a State ... impair its

obligations," *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (per

curiam). It is irrelevant that *Dennis* involved the Commerce Clause, *contra* State Opp. 15 n.9,

because its reasoning is not limited to that context, *e.g.*, *Baca*, 935 F.3d at 930–47 (following *Dennis* and finding § 1983 cause of action under the Twelfth Amendment).[9]

> ### C.  GEO is likely to succeed on its intergovernmental-immunity claims.

> #### 1.  HB 1276 directly regulates the federal government.

HB 1276 directly regulates the federal government twice over: it regulates subjects addressed by GEO's federal contract such that it effectively dictates how GEO performs under it, *see Boeing Co. v. Movassaghi*, 768 F.3d 832, 839–42 (9th Cir. 2014), and arrogates to the State authority over the core federal function of detaining noncitizens for violating immigration law, *see CoreCivic, Inc. v. Gov. of New Jersey*, 145 F.4th 315, 325–27 (3d Cir. 2025). The Constitution forbids such interference with federal activities. Mot. 10–13.

Rather than dispute that interference, the State argues that direct regulation requires something more: textual application to the federal government or regulation of a contractor that stands in the government's shoes. *See* State Opp. 17. But intergovernmental immunity forbids laws that ***functionally*** regulate the federal government, even if not formally. *CoreCivic*, 145 F.4th at 321–25. The inquiry turns on the quantum of interference with federal activities, not the contractor's relationship with the government. *See id.* at 325. The State's contrary argument mistakenly relies on authority addressing immunity from generally applicable tax laws that do not regulate federal contractors' contractual performance. *See United States v. New Mexico*, 455

---

[9] The State (at 15) mistakenly invokes the Supreme Court's 150-year-old suggestion that the Contracts Clause does not create a private cause of action. *See Carter v. Greenhow*, 114 U.S. 317, 322 (1885). But *Dennis* "clarified that *Carter* was a question about pleading and not about whether the plaintiff could bring a claim under the Contract Clause." *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 727 (8th Cir. 2022). *Carter* has nothing to say about any issue pertinent to this case. *Contra* State Opp. 15–16 n.9.

U.S. 720, 735–36 (1982). That is not the "applicable framework" for GEO's claims. *Contra* State Opp. 17; *see also Boeing*, 768 F.3d at 839 (dismissing similar authority as "inapposite").

The County suggests that direct regulation requires something akin to a "ban" on federal detention contracts, as in *CoreCivic*, or the imposition of "higher" standards than federal law requires, as in *Boeing*. *See* County Opp. 11–12.[10] The County misreads those cases. Although *CoreCivic* involved a contract ban, it recognized "substantial interference" as the standard. *See* 145 F.4th at 325. And although *Boeing* disapproved of regulations imposing "more stringent" standards, its concern was the state's attempt to dictate how a contractor rendered services altogether. *See* 768 F.3d at 840.

Both the State and County attempt to distinguish *Boeing* on the ground that the federal government was the "responsible party" subject to regulation. State Opp. 17–18; County Opp. 12. Again, they misread the decision, which turned on the law's regulation of a contractor hired by the federal government to conduct the activities for which it was responsible. *Boeing*, 768 F.3d at 839–40. As the Ninth Circuit explained, the law "directly interferes with the functions of the federal government" ***because*** it "regulates not only the federal contractor but the effective terms of the federal contract." *Id.* at 840. That is precisely the aim of HB 1276. GEO is therefore likely to succeed on its direct-regulation claim.

---

[10] Much of the County's argument appears to conflate the regulation and discrimination prongs of intergovernmental-immunity doctrine. *E.g.*, County Opp. 12 (HB 1276 involves no direct regulation because it merely requires "compliance with general public health regulations"). Its argument also erroneously relies on preemption cases that do not address intergovernmental immunity. *E.g.*, *Hencely v. Fluor Corp.*, 146 S. Ct. 1086, 1098–99 (2026).

8

**2.      HB 1276 discriminates against the federal government.**

HB 1276 singles out the federal government for discriminatory treatment, imposing a comprehensive regulatory regime exclusively on Colorado's lone immigration detention facility operated by federal contractors. Mot. 14–15. The law's Fiscal Note makes its discriminatory purpose clear, *Fiscal Note*, *supra*, at 4 (AIPC is the "one" facility subject to HB 1276), such that the law is discriminatory "[o]n its face," *United States v. Washington*, 596 U.S. 832, 839 (2022); *see also Inslee*, 166 F.4th at 1191–93 (Bumatay, J., dissenting).

The State downplays this discrimination by pointing to the "broader regulatory context," even as it concedes that HB 1276 imposes "new substantive requirements" on AIPC. State Opp. 19. It doubles down on arguing that such requirements are speculative absent rulemaking. *Id.* at 19–20. Again, this ignores that the law *itself* imposes these mandates, uniquely singling out AIPC with requirements that apply to no other facilities. *Fiscal Note*, *supra*, at 3. By definition, *any* rulemaking effectuating those requirements would be discriminatory.

Inspections and other regulatory standards under existing law do not provide relevant context. *See* State Opp. 19; County Opp. 2–3. Even if AIPC is subject to "identical" requirements as other facilities under *different* regimes, State Opp. 19, HB 1276 expressly grants local agencies and CDPHE "addition[al]" authority over AIPC *alone*, Colo. Rev. Stat. §§ 25-1-506(3)(b)(XVI), 25-1.5-101(1); *see also Fiscal Note*, *supra*, at 2 (HB 1276 "permits" local inspections and "expands" CDPHE's authority over AIPC). It likewise confers new authority on CDPHE to conduct certain investigations. Colo. Rev. Stat. § 25-1.5-101(1)(i)(I)(D). Nothing in existing law provides any analogue—that is precisely why HB 1276 was enacted. Existing law supposedly requires annual inspections and permits unannounced inspections, State Opp. 19, but

9

this does not demonstrate that other facilities are subject to the "additional unannounced inspections" that "must" be conducted quarterly under HB 1276, *see* Colo. Rev. Stat. § 25-1.5-101(1)(i)(I)(D).

Nor does context salvage HB 1276's "compliance regime," which the State admits is "different" from others. *See* State Opp. 20. That the regime creates "parity" in ensuring that CDPHE is reimbursed for inspecting state and federal contract facilities alike does not somehow justify the discriminatory means of requiring *only* the federal contractor to foot the bill, as the State oddly suggests. *Contra id.* at 20 & n.10. Nor does the abstract risk of "consequences" facing state contractors that refuse inspections warrant the imposition of a monetary penalty on *only* the federal contractor, no matter the State's self-serving view of the penalty's severity. *Contra id.* at 20. The relevant inquiry is whether the law is "discriminatory with regard to the economic burdens that result" from it. *See Washington v. United States*, 460 U.S. 536, 544 (1983). It plainly is. HB 1276 assesses fees and penalties against *one* federal contractor. Context changes none of that.

At bottom, neither the State nor the County identifies any similarly situated facility subject to the *same* requirements that HB 1276 imposes—because none exists. Even the majority panel in *Inslee* would have invalidated the law at issue on these facts, not to mention the eight dissenting judges. The County counters that the law in *Inslee* "categorically" treated private detention facilities and state prisons differently. County Opp. 12. That misses the point. Both the majority and the dissent in *Inslee* agreed on the law's invalidity if state prisons were the proper comparators, but disagreed on using those comparators. *Compare* 151 F.4th at 1119–22, *with*

166 F.4th at 1191–93. Here, there is no dispute over the proper comparators, nor any doubt that AIPC stands alone under HB 1276. That should end the matter.[11]

### D.      GEO is likely to succeed on its preemption claims.

Congress's paramount interests in regulating immigration detention are beyond serious dispute. Mot. 17–18. The State's (at 24) and County's (at 14) attempt to reframe the issue as one of health and safety runs into a wall of authority affirming Congress's "overwhelmingly dominant" interests in the field. *See United States v. South Carolina*, 720 F.3d 518, 531 (4th Cir. 2013); *accord Arizona v. United States*, 567 U.S. 387, 394 (2012). "*Only* the federal government has the power to decide whether, *how*, and why to hold aliens for violating immigration law," *CoreCivic*, 145 F.4th at 325, even if states have an interest in health and safety. The "50 separate states" cannot unilaterally override that exclusive authority under the guise of advancing such interests. *See Arizona*, 567 U.S. at 395.

The State's and the County's efforts to diminish the pervasiveness of federal legislation in the field are equally unavailing. *See* State Opp. 22–23; County Opp. 14. Congress's decision to vest the Secretary of Homeland Security with sole authority to decide where and how to detain noncitizens, and its decision to empower the Secretary alone to contract for such detention, would be meaningless if states could legislate their own conditions on immigration detention and the federal contracts governing it. 6 U.S.C. § 112(b)(2); 8 U.S.C. § 1231(g)(1); *see also* 18 U.S.C. § 4013; 28 U.S.C. § 530C(a)(4). Regardless, the dominance of Congress's interests over immigration renders a "pervasive" regulatory scheme unnecessary to trigger preemption. *See*

---

[11] The County's aside (at 13) that HB 1276's text mentions "local" and "county" facilities ignores that *no such facilities* subject to the law exist. *Fiscal Note for HB 26-1276*, *supra*, at 4.

11

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). The State simply ignores this authority. State Opp. 24.

In any event, HB 1276 stands as an obstacle to the Secretary's authority to effectuate congressional intent in establishing contractual conditions of detention. Mot. 18–21. Whether the AIPC contract or the PBNDS themselves carry preemptive force is beside the point. *Contra* State Opp. 23, 25; County Opp. 14, 15. "[B]urdens on federal contracting" are preempted when "federal law evinces an intent to give the federal government full discretion in a specific field," *ConocoPhillips Alaska, Inc. v. Alaska Oil & Gas Conserv. Comm'n*, 177 F.4th 964, 974 (9th Cir. 2026), and Congress did just that for detention decisions, *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986). HB 1276's "interference with the discretion that federal law delegates to federal officials goes to the heart of obstacle preemption." *GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 761 (9th Cir. 2022) (en banc); *see also id.* at 762 (recognizing presumption of preemption in these circumstances). [12]

The State and the County devote scant attention to the extensive conflicts HB 1276 creates with the AIPC contract and PBNDS, Mot. 16–17, instead fixating on isolated, boilerplate references in both instruments to compliance with "applicable" state and local laws, State Opp. 23–24, 26; County Opp. 14–16. This sort of generalized contractual language cannot render valid a law that directly interferes with the Secretary's statutory authority to establish detention conditions, effectively conferring on state and local governments a power to displace the

---

[12] In similar cases, the United States has taken the position that federal law occupies the field of immigration detention and that state laws attempting to regulate conditions of detention create obstacles to federal objectives. Dkt. 8 in *Washington v. Geo Grp., Inc.*, No. 26-6466 (D.N.J. Jun. 12, 2026), at 6–7.

Secretary's determinations. *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 440–41 (9th Cir. 1991).

To state the obvious, a law cannot be "applicable" if it is invalid as applied to the circumstances

of the contract. *See DirecTV, Inc. v. Imburgia*, 577 U.S. 47, 55 (2015).[13]

Scattered references in the AIPC contract and PBNDS to state and local laws cannot bear

the weight that the State and the County ascribe to them, either. *See* State Opp. 23–24; County

Opp. 14–15. As a matter of interpretation, references to compliance with *specific* laws must

control over *general* references. For example, the contract's reference (at 37) to compliance with

"state laws regarding inspections ... for all vehicles" would be superfluous if its catchall

references (at 33 & 34) to compliance with "State and local laws" (at 33) and "applicable ...

state[] and local laws" (at 34) already encompassed "all" laws. The same is true of the PBNDS.

*Compare, e.g.*, PBNDS at 19 ("Compliance with all applicable ... state and local safety and

*sanitation* laws."), *with id.* at 22 ("[S]tate and local environmental regulations and requirements

governing methods for handling and disposing of *refuse*.").

In fact, the text contradicts the State's and the County's reading. As one example, the

contract neither "mandat[es] … compliance with state or local … inspections" (State Opp. 24)

nor is "silent" on the issue (County Opp. 16). Instead, the contract provides for inspections solely

by the federal "Government" and subjects any "proposed inspections" by other "regulatory

agencies" to ICE approval. AIPC Contract at 46; *see also id.* at 26 (defining "Government" as

the "United States Government"). The State's assertion that HB 1276's inspection regime is

somehow compatible with that provision blinks reality. *See* State Opp. 25.

---

[13] Again, the United States itself has repeatedly made this point. *E.g.*, Dkt. 290 in
*Washington v. Geo Grp., Inc.*, No. 17-cv-5806 (W.D. Wash. Aug. 20, 2019), at 16–17.

Nor does the AIPC contract resolve the conflict by mandating compliance with more "stringent" standards, as the State argues. *See id.* at 26. The State divorces that language from its context, misleadingly interpreting it to refer to standards imposed by state or local laws. But the contract does not mention those laws until *six paragraphs later*. *See* AIPC Contract at 33. The preceding paragraphs list standards set by the PBNDS and various national organizations, and it is *those* standards to which the "most stringent" language plainly refers. *See id.* at 32–33.

### E.      GEO is likely to succeed on its Contracts Clause claim.

Again dancing around the obvious conflicts that HB 1276 creates with GEO's obligations under the AIPC contract, *see* Mot. 21–22, the State and the County recycle their meritless assertions concerning the language in the contract (and the incorporated PBNDS) referencing compliance with state and local laws, *see* State Opp. 27; County Opp. 16–17. And once again, they fail to identify *any* language rendering "applicable" the provisions of HB 1276 such that GEO's compliance with them would not impair its contractual relationship with ICE. GEO cannot comply with HB 1276's mandatory inspection regime, for example, without breaching its obligation to "abide by ICE's determination as to whether the proposed inspection is required." AIPC Contract at 46–47. Whether GEO has "recognized … Colorado's authority" by "continuously submitting to and facilitating CDPHE inspections" (State Opp. 6; Lawrence Decl. ¶ 12) is irrelevant: GEO's past cooperation with *pre-existing* inspections under Colorado's *generally applicable* health regulations says nothing about whether HB 1276's *new*, *targeted* regime is constitutional or consistent with the AIPC contract.

The costs of such compliance alone would defeat GEO's expectations under the AIPC contract. Mot. 22. The State dismisses those costs as "foreseeable," State Opp. 28, but all it can

14

point to is contractual language warranting that "no legal impediments to housing ICE detainees under Colorado law" existed when the contract was executed in 2021, AIPC Contract at 33. It is difficult to understand how a warranty about the legality of *housing detainees* somehow renders fees and penalties related to *inspections* foreseeable, to say nothing of reporting mandates and staffing requirements. HB 1276 is not a "foreseeable change"—it is an unprecedented, targeted regulatory assault on a single facility.

**F.     Section 2 of HB 1276 is unconstitutional and non-severable.**

The County offers two independent reasons why GEO is unlikely to succeed on the merits of its challenge to Section 2 of HB 1276, which authorizes inspections of AIPC by local agencies. Neither is availing.

*First*, the County contends that GEO failed to make a prima facie showing that Section 2 is constitutionally suspect, supposedly because its motion focuses on Section 3 and references Section 2 in a footnote. County Opp. 6–8. That is pedantry. GEO's motion explicitly challenges the constitutionality of the entire inspection regime imposed by HB 1276, including Section 2. *See* Mot. 7–9 & n.9. That provision impermissibly seeks to impose discriminatory and preempted inspections on AIPC that burden its contractual relationship with ICE, the same as Section 3. That Section 3 is invalid for additional reasons—including its mandatory quarterly inspections and imposition of penalties—does not insulate Section 2.

*Second*, the County argues that Section 2 is severable if Section 3 is invalidated. County Opp. 8–9. But if Section 3's discriminatory, preempted, and burdensome inspection regime is invalid, so is Section 2's. It makes no difference whether the latter seeks to "clarif[y]" authority that was "previously implicit" in the law, *contra id.* at 9, although it plainly does not, *see* Colo.

15

Rev. Stat. § 25-1-506 (3)(b) (creating "*addition*[*al*]" duty of inspection). Laws that violate the

Constitution are not valid merely because they codify an unconstitutional practice. In any event,

Section 2 is not "implicit" in any other law. The very enactment of Section 2 confirms that local

agencies lacked the specific authority HB 1276 now purports to confer—authority that, like

Section 3, is targeted exclusively at AIPC.

## II.    The remaining factors favor preliminary injunctive relief.

Because GEO is likely to succeed on its constitutional claims, the remaining factors for

preliminary injunctive relief are necessarily satisfied. *Free the Nipple-Fort Collins v. City of Fort

Collins*, 916 F.3d 792, 805–07 (10th Cir. 2019) (constitutional violations inflict irreparable injury

and tip the other factors in favor of an injunction). Authority suggesting that violations of

individual rights alone satisfy those factors (State Opp. 29 (relying on *Leachco, Inc. v. CPSC*,

103 F.4th 748 (10th Cir. 2024)) is inapposite, because—at a minimum—the availability of pre-

enforcement injunctive relief for Supremacy Clause violations "does not depend upon the

existence of some ... constitutional right." *Green Room*, 157 F.4th at 1207 n.4; *see also Garfield

Cnty.*, 2026 WL 1801091, at *9 n.10. *Leachco* did not hold otherwise; it simply distinguished

*separation-of-powers* claims from those involving individual rights. 103 F.4th at 754–55.

GEO likewise faces irreparable harm from being forced to breach its contract with ICE as

it tries to comply with HB 1276's provisions. It is *the State* that is "mistaken" in claiming that

the law does not "directly impose[]" substantive requirements, not the other way around. *Contra*

State Opp. 28; *see supra* at Point I.A. Regardless, the law indisputably mandates inspections and

investigations under a compliance regime that violates GEO's contractual obligations. That *ICE*

has previously allowed GEO to "submit[]" to similar inspections under existing law does not

16

mean that **CDPHE** (or ACHD) has the "authority," without inducing a breach, to conduct the inspections and investigations that HB 1276 requires. *Contra id.* at 29; *see* County Opp. 17–18. And even if the fees for inspections have not been set, State Opp. 28, the penalties for non-compliance are fixed by the law itself. That is more than enough, because—as both the State and the County concede—damages for financial harm occasioned by HB 1276 are unrecoverable. *See Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010).

Neither the equities nor the public interest favor allowing the state, immune from any financial recourse, to commit those constitutional violations or induce those contract breaches, *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013), especially when it would interfere with GEO's role in carrying out federal law-enforcement initiatives, *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1024 (10th Cir. 1996). That is not a "derivative interest[]," *contra* County Opp. 18, but the very purpose that GEO was contractually engaged by the federal government to fulfill. Nor does the state's allegedly "strong interest" in regulating "health and safety" displace the federal interest, enshrined in the AIPC contract, to uniformly enforce immigration laws according to *its* standards. *Contra* State Opp. 30. The State gestures to findings by federal authorities about purported issues with AIPC's implementation of those standards, State Opp. 30, but that hardly justifies the "conflicting means" by which the state unilaterally seeks to enforce *different* standards imposed by state law, *see Edmondson*, 594 F.3d at 771.

The County's invocation of the pending tuberculosis investigation (and a prior investigation of gastrointestinal illness) at AIPC (County Opp. 4–5; Weidenbach Aff. ¶¶ 7–10) does not change this analysis. First, that investigation arose under ACHD's *pre-existing* authority under Colo. Rev. Stat. § 25-1-506, not HB 1276. Second, any barriers GEO allegedly

17

imposed on that investigation are governed by GEO's obligations under the AIPC contract—
which subjects GEO's ability to participate in responding to inspection requests to ICE's
determination. AIPC Contract at 46–47. The County's frustration with GEO's compliance with
its contractual obligations does not justify enacting an unconstitutional statute to override those
obligations.

**III.     A permanent injunction and final judgment are warranted.**

Citing no contrary authority, the State questions whether a permanent injunction can
issue at this stage. State Opp. 31. Of course it can, because the validity of HB 1276 can be
decided without further factual development. *Banks v. Gonzalez*, 415 F. Supp. 2d 1248, 1252 n.4
(N.D. Okla. 2006). It was ***that*** rationale that drove the analysis in *Banks*, *see id.*, not any
suggestion that a separate motion to dismiss "warranted denial" of permanent injunctive relief,
*contra* State Opp. 31.

The State tries to create a factual issue by asserting that the Court must consider GEO's
supposed past "submission to Colorado's regulatory and inspection authority" and await the
outcome of "CDPHE's rulemaking process." *Id.* at 32. But HB 1276's constitutionality does not
depend on GEO's past conduct. A federal contractor cannot immunize one law from
constitutional scrutiny by acquiescing to another. Nor is rulemaking needed when, as discussed
above, the plain text of HB 1276 runs afoul of the Constitution, and any rulemaking effectuating
its discriminatory, preempted, and burdensome provisions would necessarily be unconstitutional.

**CONCLUSION**

The Court should grant preliminary and permanent injunctive relief against the
enforcement of HB 1276.

Dated: July 14, 2026.

Respectfully submitted,

*s/ Frederick R. Yarger*

Frederick R. Yarger
James N. Boeving
Shiloh A. Rainwater
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:   303.244.1800
Facsimile:    303.244.1879
Email:   yarger@wtotrial.com
            boeving@wtotrial.com
            rainwater@wtotrial.com

Scott Allyn Schipma
The GEO Group, Inc.
4955 Technology Way
Boca Raton, FL 99431
Telephone:   561.999.7615
Email:   scott.schipma@geogroup.com

*Attorneys for Plaintiff*

19

**CERTIFICATE OF WORD COUNT**

I certify that this document complies with the 5,400-word length limitation requested in the unopposed motion filed July 10, 2026. Dkt. 26. As measured by the word-count feature of Microsoft Word, the body of this document contains 5,397 words.

*s/ Frederick R. Yarger*

20

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on July 14, 2026, I electronically filed the foregoing **THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties through their counsel.

*s/ Frederick R. Yarger*

21