**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-2533-DDD-SBP

THE GEO GROUP, INC.,

Plaintiff,

v.

JILL HUNSAKER RYAN, Executive Director of the Colorado Department of Public Health & Environment (CDPHE), in her official capacity;

JEFF LAWRENCE, Director of the Environmental Health and Sustainability Division of CDPHE, in his official capacity;

PHIL WEISER, Colorado Attorney General, in his official capacity;

KELLY WEIDENBACH, Executive Director of the Adams County Health Department, in her official capacity;

Defendants.

---

**REPLY TO RESPONSE TO EXECUTIVE DIRECTOR KELLY WEIDENBACH'S MOTION TO DISMISS PLAINITFF'S AMENDED COMPLAINT [ECF 37] PURSUANT TO FED. R. CIV. P 12(b)(6)**

---

Defendant, Kelly Weidenbach, Executive Director of the Adams County Health Department, in her official capacity, by and through undersigned counsel, Kerri A. Booth of the Adams County Attorney's Office, hereby submits this Reply in support of her Motion to Dismiss Plaintiff's Amended Complaint [ECF 41] ("Motion") and addresses Plaintiff's Response [ECF 48] ("Response") as follows:

## INTRODUCTION

GEO's Response does not save its claims against Defendant Weidenbach; it actually

narrows them. GEO now apparently abandons any claim against Defendant Weidenbach under Section 3 of HB 1276. Resp. at 26. It also does not dispute that Section 2 does no more than describe authority that the Adams County Health Department ("ACHD") held before HB 1276's enactment. GEO fails to identify any facts evincing that ACHD has demanded, threatened, or planned any inspection of GEO's Aurora facility. What that leaves then, is GEO's request to enjoin a discretionary, penalty-free provision that this Court has already concluded "does not materially change the County's authority or impose any significant new burden on GEO." (ECF 34, p. 9) As a result, the claims against Defendant Weidenbach should be dismissed.

## ARGUMENT

GEO's Response narrows its claims against Defendant Weidenbach to Section 2 of HB 1276. But even as to Section 2, GEO cannot identify an injury that Defendant Weidenbach caused an actual conflict with federal law. Further, the Court's earlier findings and GEO's own concessions answer the remainder of GEO's arguments.

### A. GEO's Concession Confines its Claims Against Defendant Weidenbach to Section 2.

The body of GEO's amended complaint contains only four express references to Executive Director Weidenbach, which are located within two paragraphs. (ECF 37 at 1, ¶ 1 & 4, ¶ 13.) The latter of these generically asserted:

> Weidenbach has oversight of the Adams County Health Department, which has been responsible for managing investigations related to epidemics or communicable diseases at the federal detention facility as set forth in HB 1276.

(*Id.* at 4, ¶ 13.) No qualifications or limitations were offered in the amended complaint as to scope of the claims asserted against Executive Director Weidenbach.

The County's Motion argued that GEO cannot sue Defendant Weidenbach over Section 3

because it is the Colorado Attorney General, not Defendant Weidenbach as head of ACHD, that enforces Section 3's penalty provisions, as the amended complaint itself alleges. (FAC at 6, ¶ 23.) See Motion, pp. 9-12.

GEO's response is that it asserts no Section 3 claim against Defendant Weidenbach, so her Section 3 arguments are "immaterial." Response, p. 26. The County accepts that concession and asks the Court to hold GEO to it. Any Section 3 claim against the County should be dismissed, and the FAC's prayer for relief against Defendant Weidenbach, which seeks to enjoin enforcement of "HB 1276" generally, should be read as limited to Section 2.

**B. GEO has failed to State a Claim against Defendant Weidenbach based on Section 2.**

With Section 2 of HB 1276 resolved by GEO's own admission as to Defendant Weidenbach, the only question left is whether GEO has stated a claim against her based on Section 2. It has not. As the Court has previously held, "Section 2 does not materially change the County's authority or impose any significant new burden on GEO." (ECF 34 at 9) GEO has not plausibly alleged otherwise in its amended complaint. The Court, moreover, also noted GEO's prior concession "for purposes of this case, that is subject to the panoply of generally applicable laws and regulations that did not directly target this federal activity." (*Id.*)

GEO has not plausibly alleged Section 2 injures it in any way, that Section 2 treats it less favorably than ACHD could already treat it, or that Section 2 conflicts with anything in GEO's federal contract.

<u>1. HB 1276 Section 2 does not independently injure GEO.</u>

As noted above, the Court has already explained why Section 2 does not cause GEO harm on its own. It found that Section 2 changes "shall have" to "has," makes explicit a county agency's

authority to inspect, and is "consistent with existing practice as well as all parties' views of existing county authority." (ECF 34 at 9-10) It observed that the State and ACHD "have already been inspecting the Aurora facility concurrently with the federal government" and that GEO "does not in this case object to those inspections or preexisting laws." (*Id.* at 4) And it added that to the extent Section 2 increases any government authority, it does so "only . . . in conjunction with the other provisions" at issue, so that where those provisions are enjoined, "Section 2 does not cause any irreparable harm on its own." (*Id.* at 10 n.2) The Court has since extended that injunction of the (i)(I)(D) amendments through December 15, 2026. (ECF 46)

GEO's Response never addresses footnote 2. GEO instead argues that ACHD's preexisting authority is "irrelevant" because it may still interfere with federal functions. Response, pp. 16-17. GEO, however, has chosen not to challenge ACHD's existing inspection authority and concedes that such preexisting inspection authority applies. Simply stated, GEO has not explained how an order enjoining Section 2 against Defendant Weidenbach would change what ACHD may already lawfully do. A plaintiff must show that its injury is traceable to the defendant's challenged conduct and likely to be redressed by the relief sought. GEO's own concessions undercut that showing as to Section 2 since they concede that the amended complaint does not allege

The elements of a discrimination claim require some form of threat or injury. That injury must be both "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Since facial discrimination on its own is not enough to establish an injury in fact, not pleading a concrete harm constitutes GEO's failure to state a claim. In its Response, GEO reframes this as a justiciability argument. Response, p. 19, n.12. However, since Article III standing is a question the Court must satisfy itself regardless of how it is labeled (e.g.

whether brought under Fed. R. Civ. P. 12(b)(1) or (6)), this point is properly before the Court. *Kerr v. Polis,* 20 F.4th 686, 691-92 (10th Cir. 2021) (quoting *Felix v. City of Bloomfield*, 841 F.3d 848, 854 (10th Cir. 2016)). Justiciability requires more than a hypothetical injury and since GEO admits that it is not challenging any "specific action" its concerns are only hypothetical and speculative.

2. Section 2 does not single GEO out for *less* favorable treatment.

GEO's discrimination theory appears to rest on the Court's statement that HB 1276 "facially singles out federal activity." Response, pp. 16-17; ECF 34 at 7. Importantly, in this case the Court defined discrimination as singling the federal government or its contractors out for "less favorable" treatment. ECF 34 at 7 (quoting *Washington v. United States*, 460 U.S. 536, 546 (1983)); see also *United States v. Washington*, 596 U.S. 832, 839 (2022).

Here, the burdens the Court identified as unique to GEO were "the requirement of a certain number of unannounced visits" and "the penalty scheme," together with the rulemaking and staffing authority it contained in Section 3, subsection (dd). (ECF 34 at 8–9.) Section 2 contains none of these burdens or penalties. It contains no frequency requirement, no penalty, no fee, and no new access obligations. It confirms that a county or district public health agency "has" inspection authority, which the Court found was consistent with existing practice. *Id.* at 9. A provision that treats GEO no differently from how ACHD could already treat it is not "less favorable" treatment.

The Court's observation that the extent of a burden is "irrelevant" under *Washington*, ECF 34 at 8, does not change this. That principle assumes some unfavorable treatment to measure. GEO has not identified any for Section 2. The rule that a small burden does not save a discriminatory law presupposes differential treatment; it does not dispense with it. In the passage GEO relies on

in its Response, the Court identified that treatment as the required unannounced visits and the penalty scheme, which it found do not apply to other facilities. ECF 34 at 8. Section 2 contains neither of those features. It sets no minimum number or schedule of inspections, and it imposes no penalty on GEO for refusing one. It therefore does not subject GEO to any requirement that ACHD could not already impose, and so does not treat GEO less favorably.

3. GEO fails to identify a conflict with federal law.

GEO argues that the "text" of Section 2 creates a conflict because it leaves ICE no role in approving inspections. Response, pp. 19, 22-24. However, obstacle and impossibility preemption require an actual conflict, not a theoretical one. See *English v. General Electric Co.*, 496 U.S. 72, 78-79 (1990). An actual conflict occurs either "where it is impossible for a private party to comply with both state and federal requirements … or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 79 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941)). GEO has not pled facts supporting an actual conflict here.

Here, the Court read the contract's requirement that GEO operate in accordance with "[s]tate and local laws" to include "preexisting, generally applicable state laws currently in effect at the time of contract formation." (ECF 34 at 8-9) Defendant Weidenbach's inspection authority under Colorado's public health statutes is exactly that kind of law, and the Court found it has been exercised concurrently with federal oversight. (*Id.* at 4.) Further, GEO "has conceded, for purposes of this case, that it is subject to the panoply of generally applicable laws and regulations that do not directly target this federal activity." (*Id.* at 9.) GEO cannot concede that the County's preexisting inspection authority applies and simultaneously claim that the same authority,

confirmed in Section 2, obstructs federal operations.

Further, the amended contract continues to require compliance with regulatory agencies unless ICE directs otherwise. (ECF 38-1 at 32, § H.) GEO does not allege that ICE has so directed or that Defendant Weidenbach has demanded anything inconsistent with the contract. GEO's Contracts Clause theory depends on the possibility that ICE might someday instruct GEO to refuse an inspection. Response, pp. 23-24. A hypothetical instruction is not a substantial impairment of an existing contractual relationship.

GEO's footnote 11 asserts that the State and the County "no longer argue" that the contract requires GEO to comply with applicable laws. Response, p. 18 n.11. That is not correct as to Defendant Weidenbach. Her Motion argues that the amended contract "still specifically requires compliance with regulatory agencies unless ICE specifically directs noncompliance," Motion, p. 9 (citing ECF 38-1 at 32, § H), and that a federal contractor remains subject to generally applicable state and local health and safety laws, Motion, p. 5-6. Nor is this the argument the Court previously rejected. The Court declined to read the contract's compliance clause to mean that "no state law of any type" could be preempted. (ECF 34 at 9) It also read that clause to reach preexisting, generally applicable state laws in effect when the contract was formed. (*Id*. at 8–9) Defendant Weidenbach relies on the second point, not the first: ACHD's inspection authority is preexisting, and Section 2 only confirms it.

**C. GEO has not Pled Facts Connecting Defendant Weidenbach to any Enforcement of Section 2.**

With respect to enforcement of HB 1276, the only allegation about Defendant Weidenbach is FAC ¶ 13, which describes ACHD's role in past communicable disease investigations and her

oversight of it. The amended complaint, however, is simply silent as to any potential threat of future enforcement. GEO's Response describes FAC ¶ 13 as alleging that Defendant Weidenbach "oversaw similar investigations" in the past. Response, pp. 10-11. However, a Response cannot add allegations to a complaint, so the Court should consider only what the amended complaint actually says. See *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (The purpose of a "motion to dismiss is to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.").

Under *Ex parte Young*, a general supervisory role does not make an official a proper defendant. 209 U.S. 123, 160 (1908). The official must have a particular duty to enforce the challenged statute and a demonstrated willingness to do so. See *Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007); *Chamber of Commerce v. Edmondson*, 594 F.3d 742 (10th Cir. 2010); *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818 (10th Cir. 2007). In particular, the Response relies on *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), for a more lenient "some connection" standard. But even under that standard, nothing in GEO's pleading suggests that the Defendant Weidenbach has used, threatened to use, or planned to use any Section 2 authority against GEO. Further, Section 2 is also a permissive grant ("a discretionary duty," in the Court's words, ECF 34 at 2-3) with no enforcement mechanism of its own. The penalties on which GEO's claimed injury depends belong to Section 3, which GEO has abandoned as to the County. Since GEO has not pled any facts connecting Defendant Weidenbach to any challenged or threatened future enforcement of Section 2, it has failed to state a claim against her.

## CONCLUSION

For the foregoing reasons, Defendant Weidenbach respectfully requests that GEO's Amended Complaint (ECF 37) be dismissed and for such further relief as the Court deems proper.

DATED: November 12, 2026

Respectfully submitted,

*s/ Kerri A. Booth*

Kerri A. Booth
Michael A. Sink
Assistant County Attorneys
Adams County Attorney's Office
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO 80601
Phone: (720) 523-6116
Fax: (720) 523-6114
kbooth@adamscountyco.gov
msink@adamscountyco.gov

*Counsel for Defendant Kelly Weidenbach*

## STATEMENT OF COMPLIANCE

I hereby certify that the foregoing paper complies with the length limitations set forth in DDD Civ. P.S. III(A)(1).

*s/ Kerri A. Booth*
Kerri A. Booth

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Kerri A. Booth*
Michael A. Sink
Kerri A. Booth
Assistant County Attorneys
Adams County Attorney's Office
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO 80601
Phone: (720) 523-6116
Fax: (720) 523-6114
kbooth@adamscountyco.gov
msink@adamscountyco.gov

*Counsel for Defendant Kelly Weidenbach*